## R. WALTER GRAHAM, Comptroller, *v.* CLAY T. JOYCE.

*Baltimore City—Powers of School Board—Teachers' Salaries.*

Baltimore City Charter, sec. 99, providing that the salaries of all teachers shall be fixed by the board of school commissioners, not to exceed in the aggregate the amount appropriated by ordinance, vests in such board the power to fix all such individual salaries, free from control by the board of estimates, within the limits specified. pp. 300-307

An unvarying administrative practice, while having a strong persuasive influence upon the judicial construction of a statute, cannot control the clear and explicit language thereof.

pp. 306, 307

Acts 1872, ch. 377, in so far as it gave the Mayor and City Council of Baltimore control over school teachers' salaries, was in effect repealed by the charter provision giving to the board of school commissioners the power to fix such salaries.

pp. 307, 308

*Decided June 29th, 1926.*

Appeal from the Baltimore City Court (Duffy, J.).

Mandamus proceeding by Clay T. Joyce against R. Walter Graham, Comptroller of the Mayor and City Council of Baltimore. From an order for the issue of the writ, the respondent appeals. Affirmed.

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Parke, JJ.

*Philip B. Perlman, Special Counsel,* with whom was *C. C. Wallace, City Solicitor,* on the brief, for the appellant.

*D. K. Este Fisher* and *Clarence K. Bowie,* with whom was *Frederick J. Singley* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The controversy in this case is between opposing views on the location, under the charter of Baltimore City, of the power to determine what the salaries of public school teachers in the city shall be. The Board of School Commissioners claims all such power, subject to limitations on its aggregate salary budget, under the provision in section 99 of the charter that, "The salary of all officers, teachers, secretaries, clerks and employees shall be fixed by said board, not to exceed in the aggregate the amount appropriated by ordinance." On behalf of the City Comptroller the view urged is, principally, that under section 36, concerning the preparation and adoption of the estimates of city expenditures for any given year, the salary to be paid a teacher in any one position is determined by the itemized estimates and appropriations made by the Board of Estimates and the City Council. According to this latter view, the Board of School Commissioners is limited to the recommendation of salaries, and to the designation of the teachers to occupy one or another of the positions for which the salaries are so fixed by the ultimate appropriations.

The appeal is from the issuing of a writ of mandamus requiring the City Comptroller to pay to the petitioner for the writ, Clay T. Joyce, principal of the Westport Public School, the full monthly instalments of a salary of $2,780 fixed for him by the school board for the year 1926, instead of instalments of $2,480, to which amount the Board of Estimates reduced the allowance in making up the ordinance of estimates for the year. The petition for the writ recites that the school board voted to increase the salary of this principal from $2,480 to $2,780, after the building of a new school house, and the consolidation of two formerly separate schools and the housing of both in the one new building, with a consequent large increase of pupils for the school; that the increased amount was included in the estimate sent by the school board to the Board of Estimates, but that the Board of Estimates substituted the figure $2,480, the sub-

stituted amount being ultimately included in the ordinance
of estimates, and that the City Comptroller then declined to
pay the original amount, as increased by the school board.
And it is alleged, in addition, that payment of the increase
in the amount of this salary would not make the salaries
fixed by the school board, in the aggregate, exceed the amount
appropriated by the ordinance. There is no dispute on the
facts. The answer of the Comptroller sets out at length the
considerations which, as he is advised, are opposed to the con-
tention of the school board, and a demurrer to that answer
was sustained. The respondent having declined to answer
further, the writ of mandamus was ordered to be issued.

The provision in section 99 of the charter, that "the salary
of all * * * teachers * * * shall be fixed by said board, not
to exceed in the aggregate the amount appropriated by ordi-
nance," is, in itself, clear and explicit. And in *Thomas v.
Field,* 143 Md. 128, this court assumed it to be clear that
the power to fix teachers' salaries was so vested in the school
board, arguing from that fact that the City Council could not
have intended to command the expenditure by the board of an
extra fund, appropriated for equalizing salaries. In the opin-
ion in that case written by Judge Offutt, it was said, page
139, that "in our opinion, it was intended to leave the ques-
tion, as to whether it should or should not be used, in their
discretion. Any other construction would necessarily make
the provision conflict with that provision of the charter which
authorizes the School Board to fix the salaries of the teachers
in the city schools, for, until it is amended, under the charter,
that power undoubtedly rests with them, and not with the
Board of Estimates. It is true the Board of Estimates can
and does determine the aggregate amount to be allowed for
teachers' salaries, but that is a very different power from one
which would authorize them to say what salary each teacher,
or any particular class of teachers should receive, and we know
of no existing provision of law which requires the School
Board to expend the entire amount so appropriated to the
payment of such salaries, if in their judgment the needs of

the system do not require it." Quite apart from the force of that opinion as an authority, we have come to the same conclusion, after a study of the arguments against it in this case.

In the first place, counsel for the appellant urge that an earlier decision, that of *Baltimore v. Gorter,* 93 Md. 1, is in conflict with this conclusion. That was a controversy between the Council and the Board of Estimates on the claim of the Council to a power to change the purpose as specified by the board of an appropriation of a lump sum of money for "new improvements." In the estimates for that purpose, the second of the form of estimates specified in the charter, the board allowed $190,000 for "Purchase of lots, with the approval of the Mayor, City Comptroller and President of the School Board, erecting buildings, enlargement of existing buildings for school purposes." And the Council, in the ordinance of estimates, changed the statement of purpose to read, "for new improvement, to be constructed by the Inspector of Buildings for the Board of School Commissioners." In this dispute the function or powers of the Board of School Commissioners were not involved. And, indeed, the provision concerning the function of that board in the make up of the estimates for new improvements differs somewhat from the provisions concerning its function in the make up of the departmental estimates which cover salaries. For the latter estimates they are to furnish the items required for their expenses, including a statement of their salaries, and it is in respect to these items that they are given the special power under section 99; while for the estimates for new improvements they are merely to file their "recommendations" to the Board of Estimates. And there was no question in *Baltimore v. Gorter* of a difference between the recommendations of the school board and the estimates of the Board of Estimates; there was only a question of the finality of the determination by the Board of Estimates as to the application of the money, however that board might have arrived at its figure or at its decision on the application. It seems to us, therefore, to be sufficiently clear from these distinguishing facts, with-

out discussing the expressions of the Court quoted by the appellant on the powers of the Board of Estimates, and on the finality of its application of the money for the new improvements, that the decision cannot be taken to settle the question here, of the finality of the figure of salary of a school principal, fixed by the school board for the estimates of the first kind, the departmental estimates of expenses.

The scheme and procedure adopted in section 36 of the charter for the making up of the estimates for appropriations, and the ordinance of estimates, to which much of the appellant's argument refers, has been fully stated in the earlier cases of *Baltimore v. Gorter* and *Thomas v. Field, supra,* but a brief review of it, so far as it concerns boards such as the school board, may be of assistance here. Under the provisions of section 36, the Board of Estimates, made up of the Mayor, the City Solicitor, the Comptroller, the President of the Second Branch of the City Council, and the President of the Board of Public Improvements, are required to prepare three lists of moneys to be appropriated by the City Council for the next ensuing fiscal year. The first list, known as the "departmental estimates" is one of amounts estimated to be required to pay the expenses of conducting the public business, and includes estimates for salaries. It is to be prepared in such detail as to the aggregate sum, and the items allowed each board, as the Board of Estimates shall deem advisable. And to enable the Board of Estimates to make this list, the head of each department or board of the city government is required to send in a sworn estimate of the amounts needed for the conduct of that department or board; and this department or board estimate is required to "specify in detail, the objects thereof, and the items allowed" for its expenses, and to include a statement of salaries. The second list, is one of "estimates for new improvements"; and to aid in making up this, the head of each department or board is required to file with the Board of Estimates his "recommendations as to the amounts which they may consider will be needed" for the purpose in the particular depart-

ment or board. A third list contains amounts annually appropriated to institutions. When the three lists have thus been made up, the Board of Estimates causes a draft of an ordinance to be prepared and submitted to the City Council, providing appropriations sufficient to meet the amounts called for by the three lists. The form of ordinance is published, and afterwards considered by the Council, and the Council may reduce any amounts fixed by the Board of Estimates, except any for payment of state taxes and interest and principal of the municipal debt, but cannot increase any of the amounts or insert new items, nor can it by subsequent ordinance enlarge any items or appropriate money for the same purposes. And it is provided that no appropriation "shall be diverted or used under any circumstances for any purpose other than that named in the ordinance," and that the Comptroller shall not draw any warrant for any items unless he has received the amounts and they are actually to the credit of the department or board.

We do not find in these provisions evidence of an intention that the Board of Estimates or the Council shall exercise their judgment on the amounts of particular salaries in the statement furnished by the school board, and reduce the figures if they disagree. It has not, indeed, been required that the departmental estimates, on which the ordinance of estimates is to be based, shall give the items of these salaries; those estimates need only "be prepared in such detail as to the aggregate sum and the items thereof allowed * * * as the said Board (of Estimates) shall deem advisable." Certainly no power to regulate or fix particular salaries has been expressly given in section 36. And we see no ground for implying it from anything in the section, especially in the face of the clear provision of section 99 giving that power to the school board.

It is argued that the clause that no appropriation provided for in the ordinance of estimates shall be diverted or used for any purpose other than that named in the ordinance, is inconsistent with a power in the school board, after a reduc-

tion has been made in the ordinance of estimates, to require payment of a salary as originally fixed by it, making up the deficiency, necessarily, out of portions of its aggregate appropriations other than that appropriated in the ordinance to the particular salary. This argument assumes that the clause contemplates itemization of teachers' salaries in the ordinance to be laid before the Council, and, as has been seen, that is not required. And the argument seems mistaken, too, in assuming that the final effect given to the designations of purpose in the ordinance may serve to validate an action taken in it even beyond the powers of the Board of Estimates and the Council. The clause refers only to ordinances made up in accordance with the directions of the charter, and, in itself, leaves unaffected the question we are now considering: How shall the ordinance be made up, or who shall fix the items of salary to be paid out of the appropriations?

The further provision, in the same clause, that the Comptroller shall not draw his warrant for any of the items in said ordinance of estimates unless he has received the amounts, and they are actually to the credit of the board, is thought to be inconsistent with power in the school board to resort to other portions of its appropriation to make up a salary as originally fixed by it. But this provision is concerned only with the sufficiency of funds in hand applicable to the payment of teachers' salaries, and there seems to be nothing in it to answer the question, What salaries may be paid out of the total appropriation for the purpose, from which amounts have been received and credited to the school board. It seems to us to have no bearing on the apportionment of the appropriation in salaries.

Other arguments which find in section 36 inconsistencies with the claim of full power in the school board to fix salaries, seem to start from an assumption that it was, in point of fact, intended that the Board of Estimates and the Council should pass judgment on particular items of salary, and change them if they saw fit. It is argued that if the school board has the full power to fix the items of salary to be paid

out of the total appropriation, then it must follow that neither the Board of Estimates nor the Council can reduce particular salaries; and from this consequence an opposite construction of section 99 is inferred. The rules of interpretation for settling a conflict between portions of a statute have been dwelt upon, and section 99, it is argued, must be harmonized with the provisions of section 36, by confining the power of the school board to something short of full power over particular salaries. But, as has been said, we see no conflict between the two sections, for in section 36 we find no evidence of the assumed intention to give the Board of Estimates or the Council power to act directly on these items. These bodies have been given power to reduce the aggregate appropriations for salaries, and thus, and thus only, to interfere if their judgment differs from that of the school board as to items. They are required only to exercise their judgment on the aggregate amounts, in the light of all the information given them; the judgment of the school board is the judgment called for on particular salaries and these considerations answer, in part, the arguments that the school board would have a dispensing power greater than that intended, that it could legislate with little restraint, and defeat the wishes of the Board of Estimates and those of the Council; the answer is that as to the amounts of particular salaries the wishes of the Board of Estimates and those of the Council are not called for, and are not given any effect except the indirect effect which may come from their action on the aggregate appropriation for salaries. In addition, it may be said in answer to these last arguments, that the power of the school board in making up its budget of salaries is not unlimited, but is only a distributing power. For the salaries of teachers a fund is appropriated, limited as the Board of Estimates or the Council may think proper, and the power of the school board is, in the end, only a power to apportion that fund.

The answer of the appellant, to which the demurrer was sustained, alleges that the freedom given the school board to fix salaries, under the construction now given section 99, has

never before been claimed for it, or for any of several other boards which have been given similar powers, that the actual administrative practice has been developed upon the opposite construction, and that such power in this or in any other board would give rise to conflict and serious interference with the improved and elaborate accounting or budget system now in operation in the city, and would interfere with a system recently adopted for the retirement and pensioning of city employees. And a large part of the appellant's argument is devoted to the contention that the unvarying administrative practice, and the consequences of interfering with it, should compel the adoption of a construction in harmony with it. It seems to us questionable whether much conflict is to be anticipated so long as the school board fulfils its duty of transmitting to the Board of Estimates each year an itemized statement of its salaries. But we are clearly of opinion that if it is to be anticipated, the fact cannot justify a construction other than that so far given the charter provisions in this case. An unvarying practical construction of a statute for a long period of time must, of course, have a strong persuasive influence upon the judicial construction of it, in so far as it is open to construction, and "ought not to be disregarded but upon the most imperious grounds." *Hess v. Westminster Savings Bank,* 134 Md. 125; *Burroughs Adding Machine Co. v. State,* 146 Md. 192. Here it is not clear from the allegations that the practice has involved what amounts to an opposite construction of the charter. It does not appear that any difference of opinion on an item of salary, and on the power to fix it, has ever before arisen between a department or board and the Board of Estimates. And the fact alleged, that the items of salaries have invariably been given in the departmental estimates and in the ordinance of estimates, is not inconsistent with the full power to fix items now claimed for the school board, as we see it. But, in so far as the practice may have been at odds with the construction giving the school board that power, it could not serve to contradict that construction, for the language of the charter is

too clear and explicit to admit of any such contradiction. "The language of a statute is its most natural expositor, and when the language is susceptible of a sensible interpretation, it is not to be controlled by any extraneous considerations." *Alexander v. Worthington,* 5 Md. 471, 485; *Victory Sparkler Co. v. Francks,* 147 Md. 368, 378. Administrative practice opposed to such a clear, explicit statute, could only be in violation or disregard of it, and could not serve as a construction of it. A customary violation of the law does not repeal and re-enact the law. *Haughton v. Payne,* 194 U. S. 88, 99; *Ewart v. Bluejacket,* 259 U. S. 129, 138; note with collection of authorities in 10 *Ann. Cas.* 51.

The appellant contends that even if the power to fix the salaries resides in the school board primarily, under section 99, as it stands, an ordinance of estimates which changes any salary fixed by the board must have the effect of a legislative repeal *pro tanto,* and, as such, must supersede the action of the board. This result is deduced from the fact that the Act of 1872, chapter 377, included in the Code as section 188 of article 77, relating to schools in Baltimore City, gave the Mayor and City Council all the power of the State over free public schools in the city, and from the fact that under the Home Rule Amendment, Article XI-A, of the Constitution of Maryland, the Mayor and City Council are given power, after the adoption of the charter, to enact local laws upon the subject of schools. But if the Act of 1872 gave the Council any power over teachers' salaries not given by the terms of the present charter, it no longer gives it, for the charter provisions prevail over all previous laws on the same subject. That was the obvious legislative purpose in enacting the charter; the charter is the latest law on the subject; and, in addition, we have express repeals of all previous inconsistent local laws in the first section of the original charter, and, again, in the provision of the Home Rule Amendment, Article XI-A of the Constitution, that "any public local laws inconsistent with the provisions of said charter and any former charter of

said the City of Baltimore * * * shall be thereby repealed,"
that is, by the charter newly adopted under that amend-
ment.   In the case of *Baltimore v. Gorter, supra,* cited by
the appellant, the City Council was held to be deprived by
the charter of any power to change in its ordinance the
purpose of an appropriation as specified by the Board of
Estimates.   The Act of 1872 cannot, therefore, give any
power to change items not given by the terms of the charter
already discussed.   And the Home Rule Amendment cer-
tainly does not provide for a charter which the Council may
disregard and modify in practice.   Whatever is contained
in the charter is binding on the Council, and on all other
agencies of the city government, until amended; and the
process of amendment is not by ordinance, but only by
initiation as outlined in section 5 of the Home Rule Amend-
ment, followed by popular vote.

Another section of the Act of 1872, chapter 377, now
published in the Code as section 189 of article 77, contains
a provision that the school board shall have power to fix the
salaries of teachers, "subject to the approval of the Mayor
and City Council"; and this is likewise referred to as im-
posing a present qualification on the power.   Without re-
peating the argument, we hold that the provisions of the
charter, lacking that qualification, must prevail.   It may be
added here, too, that the very omission of that qualification
from the previous law confirms the conclusion that the charter
intended to give to the school board the power of fixing
teachers' salaries without reference to the approval of the
Mayor and City Council and, indeed, without any qualifi-
cation at all except that expressed: that the salaries should
not exceed in the aggregate the amount appropriated by
ordinance.   The express imposition of this one qualification
shows a deliberate rejection of any other.   *Jones v. Hodges,*
62 Md. 525, 538.   *DeAtley v. Senior,* 55 Md. 479, 483.

There remains to be considered only an insistence by the
appellant that the provision in section 99, concerning power
in the school board to fix salaries, must be considered in

connection with other provisions in the charter giving to other municipal boards power to fix salaries in the same, or closely similar words, and an argument that such a widespread delegation of broad power over salaries as the school board must, in effect, contend for, is unlikely. We have considered the other provisions referred to. But assuming, without deciding, that in all respects they have the same effect as the provision in section 99, we do not see that their existence in the charter, or their number, argues for a construction opposed to that which we have adopted. We must repeat that the provision in section 99 seems too clear to allow any latitude of construction by this or by any other process. And when we consider that the provision gives to the board, in the end, only a power to distribute or apportion in salaries what is appropriated for them by the Board of Estimates and the Council, we do not view the result as one which it is unlikely that the framers of the charter could have intended.

*Order affirmed, with costs to the appellee.*