ALFRED C. GILBERT ET AL. *v.* TOWN OF HAMDEN ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, JS.

Argued June 15—decided July 26, 1949.

*Frederick H. Wiggin* and *Angus N. Gordon, Jr.,* with whom was *Albert W. Cretella,* for the plaintiffs.

*John R. Thim,* with whom was *John J. Johnson,* for the defendants.

DICKENSON, J. The action was reserved to this court for the interpretation of a zoning ordinance of the defendant town affecting the plaintiffs' property. The part of the ordinance immediately involved provides that no building or premises in residence A zone shall be used and no building shall be erected or altered therein which is arranged, intended or designed to be used for other than one or more of certain stated purposes, including "2. Community house or club, except where the principal activity is one customarily carried on as a business." The parties agree that the plaintiff The Paradise Park Country Club, Inc., hereinafter referred to as the Paradise Club, is in fact a club. The defendants claim that the only type of club permitted by the ordinance is a community club and that the Paradise Club is not a community club. The plaintiffs contend that the word "club" in the ordinance includes clubs generally and that, if it should be held that the ordinance permits community clubs only, the Paradise Club comes within that definition.

The stipulated facts necessary for the determination of the issues are as follows: Alfred C. Gilbert of North Haven is the owner of Paradise Park, a tract of land of

150 acres with buildings thereon in residence district A in the defendant town. He is president and a large stockholder of the A. C. Gilbert Company, a Maryland corporation having a factory and place of business in New Haven. Gilbert leased the tract to the Gilbert Company for a term of six years from February 1, 1947. The Paradise Club was organized about May 24, 1948, as an unincorporated club and was incorporated about August 9, 1948. It holds a lease of Paradise Park as sublessee of the Gilbert Company for a term of one year from September 1, 1948. Regular membership in the club is limited to employees of the Gilbert Company, with associate memberships for their immediate families. Special membership may be issued by the board of governors in certain instances. The Gilbert Company made Paradise Park suitable for use as a country club at a total cost of $25,475.86—$10,553.16 for buildings and $14,922.70 for grading and landscaping the land. The work commenced on March 27, 1947, and was finished July 25, 1948. On August 2, 1947, the annual outing of the employees of the Gilbert Company was held at Paradise Park. This was the first such recreational use and the only one in 1947. Throughout the summer of 1948, Paradise Park was used by members of the club and their guests for sports, recreation and social activities. On weekends as many as 350 persons at a time, club members and their guests, enjoyed the facilities and privileges of the club.

Club facilities now available for various forms of recreational and social activity include ponds for swimming and boating, a softball field, volley ball, boccie and badminton courts, a dart board, horseshoe pits, a rifle range, ping pong and card tables, trails for hiking, outdoor fireplaces, picnic tables, a dancing platform and other recreational equipment, a clubhouse, a boat-

house, a bathhouse and other buildings. Incident to the uses of the club by the members and their guests, and operated for their convenience, are a checkroom adjacent to the bathhouse where members and their guests may, while bathing, check their clothing, a so-called "store" where members, their guests and those licensed to use the club as stated below may purchase cigarettes, soft drinks and sandwiches, and a pavilion having a roof but no walls, where members, their guests and licensees may eat meals and which can be used for dancing.

To augment the income available for the maintenance and improvement of the club facilities at Paradise Park, and as an activity incidental and accessory to the uses described above, the club proposes to license organizations and persons not members to use its privileges and facilities from time to time for a day or a part of a day, but only for the purpose of the kinds of recreation, sport and social activities described above, and to obtain as compensation such sums as may be agreed upon.

On or about December 12, 1930, the town of Hamden adopted zoning regulations, since amended in various respects, the last time on February 18, 1946. The zoning regulations in § 3 divide the town into classes of districts which include residence A-1, residence A, residence AA and residence B. In § 4, it is provided in part that in residence A-1, A, AA and B districts no building or premises shall be used and no building shall be erected or altered which is arranged, intended or designed to be used for other than one or more of the following uses: "1. Single family dwellings in accordance with the living space requirements set out in Section 8-A herein. 2. Community house or club, except where the principal activity is one customarily carried on as a business. 3. Educational, religious or

philanthropic uses, except correctional institutions, and including public hospitals and dormitories of an education institution. . . . 5. Farms, Private greenhouses, cemeteries, railway rights of way not including railway yards, passenger stations, Municipal and public service corporation buildings without a service yard or outside storage of supplies and the building of which shall conform to the general style of architecture in the neighborhood and is to be subject to the approval of the Board of Appeals. . . . 8. Accessory uses customarily incident to the above permitted uses and located on the same lot."

The plaintiffs desire Paradise Park to be used for the purposes of a club in connection with the activities described above and similar activities, including skating, skiing and other winter sports, golf, tennis and other outdoor games and sports, as the finances of the club may in the future permit, and for accessory uses. The defendants claim that the past use of the premises violated, and the proposed future uses would violate, the zoning regulations, so advised the plaintiffs on June 17, 1948, and instituted a prosecution of plaintiff Alfred C. Gilbert in the Town Court of Hamden in or about the month of September, 1948, for claimed violation of subsection 2 of § 4 of the ordinance. By consent of the parties, trial of that case is being continued until final determination of this suit for a declaratory judgment.

No appeal to a zoning board of appeals for a variance from the strict letter of the ordinance is involved in the matter before us, nor is the validity of the ordinance questioned. We are asked for advice as to whether the uses and proposed uses of the tract by the Paradise Club violate or would violate the zoning regulations as they stand. The phraseology of subsection 2 of § 4, "community house or club, except where the principal

activity is one customarily carried on as a business," would naturally be used if it was intended that "community" should modify both "house" and "club." The subsection begins with the word "community" and obviously relates to community projects. In determining the scope and meaning of the regulation, we must look at the object of the restriction. *Darien* v. *Webb,* 115 Conn. 581, 585, 162 A. 690. The primary purpose of § 4 was to establish a residential area. The zone was limited to single-family dwellings, and the remaining uses permitted were of a public or semipublic nature such as educational, religious or philanthropic uses, hospitals, parks and cemeteries. Municipal and public service buildings were permitted but were required to conform to the general architecture of the neighborhood, and they were permitted subject to approval of the board of appeals. Farms and private greenhouses were permitted, as were professional offices in private homes. Read as a whole, § 4 indicates a purpose to establish, and to preserve as much as possible, a residential neighborhood. It seems apparent that the existence of clubs other than community clubs would unfavorably affect that purpose. We interpret subsection 2 to read "community house or community club."

The plaintiffs have annexed to their brief what purport to be zoning ordinances of neighboring cities and towns. We cannot consider them because they are not a part of the record and judicial notice may not be taken of them. *Appeal of Phillips,* 113 Conn. 40, 44, 154 A. 238.

That the Paradise Club is not a community club is clear. Community organizations, by accepted definition, relate to the community in which they exist. Webster's New International Dictionary (2d Ed.) defines a community house as "a building designed to

serve as the social center of a town, district, etc.," and a community center as referring to community betterment. Black's Law Dictionary (3d Ed.) defines a community as "people who reside in a locality in more or less proximity." Bassett, Zoning, states (p. 198): "Small municipalities, especially in the suburbs, often feel the need of a meeting place where lectures and amateur plays can be given, where citizens' organizations can meet, and where public meetings on occasions can be held. It is not a club house. Experience has shown that it is best located in a residence district. It ought to have the advantage of quiet surroundings." The plaintiffs quote this statement in support of their claim that the word "club" as used in the ordinance is not modified by "community" because a community house is not a club. There is no reason, however, why there cannot be a community organization that would have the characteristics of a club, and this the ordinance recognizes in providing both for community houses and community clubs. The quotation is significant, too, as indicating a general purpose not to permit the establishment of buildings or the use of premises in a residential neighborhood that would disturb its "quiet surroundings." The territory in the neighborhood of the proposed club at present may not be greatly developed for residential purposes, but zoning laws look to the future; the interpretation claimed by the plaintiff would permit clubs to be established in any residence zone in the town, no matter how many houses were in the vicinity.

While the purpose of the defendant Gilbert in establishing the club was probably benevolent, the effect is one that the town expressly sought to prevent. When the uses and proposed uses of the club are considered, the difference between it and a club for the community is at once apparent. No provision is made for member-

ship of residents of the district or town as such; on the contrary, an outside organization of considerable numbers is transplanted to the district and proposes to license, at times, other organizations and persons to use its facilities. The club is under no community control. Its layout as pictured in the exhibits is so extensive and its activities so numerous and varied as to indicate that it is a project upon which a community such as the defendant town would not be likely to embark. In short, it is a social adjunct to the Gilbert Company and not to the town or a district thereof. It could not reasonably be held to be a community club, and we so decide as a matter of law.

To question (a), propounded in the reservation, asking whether the use of Paradise Park for the purposes outlined above is a violation of the zoning regulations of the defendant town, we answer "Yes." To question (e), asking whether the park is a "community house or club," and to question (f), asking whether it is a "club" within the meaning of the regulations, we answer "No." The other questions propounded require no answer.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.