## DELBROOK HOMES, INC. *v.* MAYERS, ET AL.

[No. 648, September Term, 1966.]

*Decided November 15, 1967.*

*Motion for rehearing filed on December 14, 1967; denied on January 4, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and FINAN, JJ.

82

*B. Conway Taylor, Jr.,* with whom were *Due, Whiteford, Taylor & Preston* and *Robert N. Lucke, Sr.* and *Bald, Smith & Lucke* on the brief, for appellant.

*Malcolm B. Smith,* with whom were *Smith & Wholgemuth* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court. BARNES, J., dissents. Dissenting opinion at page 85, *infra.*

The question presented in this appeal is quite narrow, involving only the legal definition of the term "private community beaches" as appears in the Anne Arundel County zoning ordinance. More precisely, the question is whether such a private community beach must be located within the perimeter of, or contiguous to, the community which it serves.

The appellant's beach property, located along the Severn River, is zoned agricultural, a classification of which one of the permitted uses is "private community beaches." Anne Arundel County Code, § 35-38 (1957). The community which appellant wishes the beach to serve is its housing subdivision known as "Chartwell" located nearly a mile from the beach property. Since 1947 appellee-complainants have owned a converted summer home situated fifty feet from the appellant's beach property, in an area of the county generally referred to as "Lakeland."

On September 19, 1962, Mayers, his wife and the Lakeland Area Civic Association filed a Bill of Complaint in the Circuit Court for Anne Arundel County, seeking both a declaration that use of the beach property by residents of another community amounted to a violation of the County ordinances, and an injunction prohibiting such a use. The lower court sustained respondent's demurrer against the Lakeland Area Civic Association. After an open hearing on the matter, the court filed an Opinion on July 24, 1966, in favor of appellee-complainants, and on September 28 of that year issued a decree which adjudicated the appellant's use of the property to be violative of the zoning ordinance, and enjoined appellant from using the property as a community beach and boating facility for the benefit of Chartwell. We affirm the opinion of the lower court.

The term "private community beach" in the context of the zoning ordinance means a beach for the use and benefit of the surrounding and neighboring property owners, not one for the exclusive use of a community in another area. Although the uses imposed on the property by either group might well be identical, the fact remains that the residents of Chartwell cannot be expected to assume attitudes of responsibility toward the surrounding neighborhood and community control over the beach facilities as would those who reside in close proximity to the beach, that is, the residents of the Lakeland area. See *Gilbert v. Town of Hamden,* 135 Conn. 630, 68 A. 2d 157 (1949).

Support for the construction adopted may be found in § 35-115 (g) of the County zoning ordinance. After setting out the requirement of the approval of the Board of Zoning Appeals as a condition to establishing public beaches, the ordinance further provides: "The above shall not apply to community beaches or swimming pools *in* and for bona-fide residential subdivisions." (Emphasis supplied.) This sentence certainly suggests that the county commissioners intended private community beaches and swimming pools to be located within or adjacent to the subdivisions which they serve.[1]

The Court finds no evidence in favor of appellant's contention that appellees did not show special damages and therefore lacked standing to sue. After purchasing the property in 1947, the Mayers expended capital in converting the summer home into a year-round home which Mr Mayers estimates is now worth between $25,000 and $30,000. Activity on the beach property commenced in the summer of 1961, creating traffic problems, noise and various encroachments upon the appellees' property from parked cars and trespassing individuals. Mr. Mayers testified that his property became both a telephone booth and

1. Judge Macgill in his opinion below drew a forceful analogy of an eventuality that could occur if the appellant's interpretation of the ordinance prevailed, stating:

> "The construction contended for by the Defendant might, not implausibly, be extended to permit a community such as 'Columbia', in Howard County, with a projected population of one hundred thousand, to buy and utilize, for the benefit of its members, a beach front in a quiet Anne Arundel County development."

a lost and found department for the beach property. Under such circumstances the lower court properly concluded that the relatively small beach property set aside for the enjoyment of a contemplated two hundred and seventy-five families would have a distinctly damaging effect of the Mayers' property, different in kind and degree from that suffered by the public generally. *The Chatham Corp. v. Beltram,* 243 Md. 138, 147, 220 A. 2d 589, 595 (1966); *DuBay v. Crane,* 240 Md. 180, 185, 213 A. 2d 487, 489 (1965); *Cassel v. City of Baltimore,* 195 Md. 348, 353, 73 A. 2d 486 (1950).

Nor can it be argued that such a construction of the ordinance discriminates against appellant's use of the premises. Although it is true that zoning must be directed toward use rather than location or ownership of property, we have on occasion permitted a commercial reclassification within a residential zone when convinced by the evidence that such use was for the accommodation and convenience of the neighborhood residents and therefore in the public interest. See *MacDonald v. Board of County Commissioners,* 238 Md. 549, 557, 210 A. 2d 325 (1965); *Hewitt v. Baltimore County,* 220 Md. 48, 58, 151 A. 2d 144 (1959). Cf. *Temmink v. Board of Zoning Appeals,* 205 Md. 489, 495, 109 A. 2d 85 (1954); *Cassel v. City of Baltimore, supra.* As Judge Macgill indicated below, a necessary corollary to the above rule is that such a commercial use may not be established when it is not for the accommodation and convenience of the residents. In such a case, as in the instant appeal, the requisite element of local public interest is absent.

The Planning and Zoning Commission, in approving the subdivision plat of Chartwell, permitted the beach property consisting of a little over an acre to be used together with approximately four acres abutting the Chartwell subdivision (which is about one mile from the beach property) to satisfy the statutory five-percent recreational use requirement. The appellant argues that such action amounted to an administrative interpretation of Anne Arundel County Code, § 35-38 (1957) that the use complained of was lawful, and that when one has acted in reliance upon an administrative interpretation, rather than upon governmental "mistake" or illegal conduct, an estoppel in pais may be imposed on the county.

In this case the only interpretation given by the Anne Arundel County Planning Administrator as to why the use complained of was lawful, in light of the wording of the ordinance, consisted of his act of approving the subdivision plan. Many months after this approval, upon inquiry by the attorney for the appellees, the Planning Administrator replied by letter stating:

"Your letters of April 3rd, 13th, and May 22nd, were referred to our legal department. In conversing with them, I have been given no opinion to indicate that the subject property in the Lakeland area is not a private community beach, or that such a use could be prohibited in an Agricultural zone. Consequently I feel that I am given no choice but to rule that the subject use is a valid one."

No further elucidation as to the definition of a "private community beach" was given.

An administrative interpretation of an ordinance by the officer whose duty it is to execute it is entitled to consideration and this is particularly so when the meaning of the language is ambiguous; however a court is not bound by such an interpretation. McQuillin, *Municipal Corporations* (3rd ed.) § 20.45, and cases cited therein. In the instant case as noted, we are persuaded that the definition of a private community beach, as used in § 35-38 of the ordinance when read in light of the language employed in § 35-115 (g), is not ambiguous and the court below was not bound by the interpretation given it by the County Planning Administrator. *Berwyn Heights v. Rogers,* 228 Md. 271, 279, 179 A. 2d 712 (1962).

Nor does the record reveal any actions on the part of the Anne Arundel Zoning and Planning officials which would enable the appellant to avail itself of the doctrine of equitable estoppel. *Kent County v. Abel,* 246 Md. 395, 399-402, 228 A. 2d 247 (1967) and cases cited therein.

*Decree affirmed, with costs.*

Barnes, J., dissenting:

I dissent because, in my opinion, section 35-38(e) of the Anne Arundel County Code *as drawn by the legislative body*

*of that county* does not prohibit the use of the subject property as a private community beach by the owners of land in the Chartwell development. To me a simple analysis of the language indicates this. Unquestionably, the use is "private," the property is used as a "beach," and Chartwell is a "community." I conclude, therefore, that the property is used as a private, community beach. If the County Commissioners *had intended to restrict the use further*—as, for example, a private beach used by a community *"adjoining the beach,"* or "in which the beach is a part," or "within the community which it serves," — I dare say that this or other appropriate language to express that intention would have been used. Inasmuch as such language was *not used* I am led to the conclusion that this limitation was not intended by the legislative body.

A complete analysis of the whole zoning ordinance and particularly section 35-38 also indicates that this is the proper construction. The established zone is "agricultural" which has far more extensive uses than are permitted in the detached dwelling districts, with two subdistricts: (1) manor type districts (2) cottage type districts. In the agricultural district, the following uses are permitted:

(a) Farms and farming uses.

(b) One-family or two-family dwellings.

(c) Commercial riding stables with minimum distance requirements as proposed under section 35-43 of the Anne Arundel Code. (Section 35-43 provides, in effect, that when a building or use is required by the zoning law to have a minimum distance, that building *or use* "shall be distant at least two hundred feet from any lot in any residence district, or any lot occupied by a dwelling, or by a school, church or institution for human care;" but small animals, including poultry not exceeding fifty in number "may be kept in structures located fifty feet or more from the lot line.")

(d) Trailer coach parks, subject to the approval required by the trailer park ordinance.

(e) "Public and semipublic buildings and uses of the cultural, administrative or public-service type, including schools, churches, fire halls, hospitals, except as regulated under sections 35-113 to 35-115 of this Code, utility lines on stations,

public parks and playgrounds, golf courses, *private community beaches,* fish and game association preserves and similar conservation areas, but not including such uses as storage yards, warehouses, garages or similar uses."

(f)  Nursing or convalescent homes.

(g)  Accessory buildings or uses to the above uses such as:

(1)  Signs showing name of farm, owner or tenant; name of institution or establishment; name of breeds of livestock or other products *"raised on the farm"* and professions; bulletin boards of churches and other public or semipublic buildings; roadside stands or signs advertising "a product legally produced, or signs indicating a service *rendered on the premises";* certain temporary unlighted signs in subdivisions which must be *"located therein"* and not *"within two hundred feet of any dwelling."*

(2)  Farming structures, provided that barns, chicken houses, etc. shall conform to the minimum distance requirements of section 35-43.

(3)  Garages for private or farm vehicles.

(4)  Piers or wharves for private use.

(5)  Home occupations, as defined in section 35-2 of the Code including, among other things:

(a)  Kindergartens.

(b)  Sale of home-grown produce or preserves.

(c)  Sale of professional services.

(d)  Taking of fish, crabs, oysters, shrimp, muskrats, etc., and their sale.

(e)  Operation of a tourist home as defined in section 2 of the Anne Arundel County Code, including serving of meals to boarders.

(f)  Use of premises as offices for contractors or agents, but not including storage yards in connection therewith.

(6)  Roadside stands; "providing, that they are used solely for the sale of produce grown *on the farm or property on which located;* * * *."

(7)  Commercial or industrial uses or structures "where such can be shown to be solely for the purpose of handling

the produce of the property on *which such a use is located,* such as plant nurseries or greenhouses, stock farms or breeding kennels, subject to the requirements of section 35-43 of this Code, sawmills for harvesting lumber *from property on which located,* abattoirs or slaughterhouses, subject to the requirements of sections 35-113 to 35-115 of this Code." (Sections 35-113 to 35-115 provide for special exceptions for abattoirs or slaughter-houses). (Emphasis supplied throughout).

It is thus seen that when the question of *location of the use* or *distances* is important, the legislative body carefully provided for these restrictions in the uses permitted in the agricultural district. The absence of any restriction as to location or distance in regard to the permitted "private community beach" indicates to me that no such restriction was intended. The words "private community beach" established in section 35-38 would have the same meaning when later used in the zoning ordinance as a permitted use in detached dwelling districts.

We have frequently held, that the legislative intent is to be determined, in the first instance, by *the words used* by the legislative body and if these words, given their ordinary meaning, indicate the legislative intent, our quest for determining that intent is over. *Pineland Lumber Co. v. Miles,* 228 Md. 584, 180 A. 2d 870 (1962) and cases cited in the opinion in that case. Our judicial duty is to give effect to the legislative intent as thus disclosed, even if we might think that the intent was a most unfortunate one, and one which we would never have had, if we had been legislators. See *Smith v. Higinbothom,* 187 Md. 115, 48 A. 2d 754 (1946). The plain fact is that we are not legislators and are forbidden by Article 8 of the Declaration of Rights of the Maryland Constitution from acting as such. As I see it, the majority of the Court has in effect *amended* section 35-38(e) of the zoning ordinance to add by construction the words necessary to reflect an intent not disclosed by the ordinary and usual meaning of the words themselves. This is not a judicial function. As Chief Judge Prescott aptly stated, for the Court, in *Amalgamated Casualty Ins. Co. v. Helms,* 239 Md. 529, 534-35, 212 A. 2d 311, 315 (1965) :

"However, construing a statute liberally and adding to it, by judicial fiat, a provision which the Legislature did not see fit to include are not one and the same thing. As stated by Justice Brandeis, for the Court, in *Iselin v. United States,* 270 U. S. 245, 251: 'What the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertance (in that case), may be included within its scope. To supply omissions transcends the judicial function.' "

The majority indicates that it finds support for its construction of the words "private community beaches" used in section 35-38(e) in the provision in section 35-115(g) setting up minimum standards in regard to applications for *special exceptions* for *public* amusement parks or *beaches* or swimming pools which at the end of subsection (g) provides: "The above shall not apply to community beaches or swimming pools in and for bona fide residential subdivisions." I come to the opposite conclusion, as it appears to me that this provision *supports* the construction I think is the correct one.

In the first place, I do not, as the majority appears to do, equate "community" with "subdivision." This seems to be the principal basis of the holding in the majority opinion, which overlooks the use of "private *community* beaches" in section 35-38(e) and "subdivision" in 35-38(g)(1) where it is stated that certain signs must be "located therein." Clearly, if the meaning were the same the language would be the same.

Secondly, it is clear that a community beach located in the *usual subdivision* involving a parcel of land within one specific area would usually be *"in* and for" that type of subdivision. (Emphasis supplied). The case before us involves a *private* community beach which *is not in the Chartwell subdivision* if the word "subdivision" is limited to mean a tract with contiguous or adjacent lots. It is clear that private community beaches in an agricultural district are not the subject of any special exception but such use is directly permitted by the zoning ordinance. See section 35-39(a) of this zoning ordinance.

Thirdly, if the legislative body had intended to *limit* the lan-

guage "private community beach" in section 35-38(e) to such beaches "in and for bona fide residential subdivisions" it would undoubtedly have used that language in section 35-38(e) as it did in section 35-115(g). The absence of that language indicates to me that no such limitation was intended. See *Graham v. Joyce,* 151 Md. 298, 308, 134 A. 332 (1926).

Fourthly, if one assumes, *arguendo,* that the meaning of the words "community" and "subdivision" must be equated, it seems quite clear to me when one considers the provisions of section 32-23 of the Anne Arundel County Code in regard to subdivisions, that recreational areas of subdivisions *are not required to be contiguous or adjacent to the lots forming the main portion of the subdivision.*

Section 32-23 in regard to reservations of recreational space provides, in relevant part, as follows:

> *"Where held appropriate* by the planning and zoning commission, *open spaces suitably located* and of adequate size for parks, playgrounds *or other recreational purposes for local or neighborhood use* shall be provided for in the design of the proposed subdivision; and, if not dedicated to the public * * * shall be reserved for the common use of all property owners in the proposed subdivision by covenant in the deeds. This shall normally be considered to be about five per cent of the gross area of the subdivision. Streams, lakes and other watercourse areas may be considered as part of the five per cent." (Emphasis supplied).

Nor does the definition in section 35-2 of the Anne Arundel County Code of the word "subdivision" indicate that all land in a subdivision must be contiguous or adjacent to other land in the subdivision. The word "subdivision" by this section is defined: "See 'development' defined in this section." The word "development" is defined as follows:

> "The division of any tract or parcel of land, including frontage along an existing street or highway, into two or more lots, plots or other divisions of land for the purpose, whether immediate or future, of building

> development for rental or sale, and including all changes in street or lot lines; provided, however, that this definition of a development shall not include the divisions of land for agricultural purposes."

There is an almost identical definition of "subdivision" in section 32-1, used in the ordinance of July 14, 1953 in regard to subdivisions.

It will be observed that there is no requirement that the *lots* in a development or subdivision be contiguous or adjacent to other lots.

The record in the present case establishes that the Planning and Zoning Commission *did* consider the subject property as "suitably located" and of "adequate size for recreational purposes for local or neighborhood use"; *did* use the area of the subject property as part of the five per cent "normal gross area of the subdivision" and approved the subdivision plan of Chartwell *on this basis*. The action of the Commission is in exact compliance with the terms of section 32-23 and in no way is violative of its provisions or intention. Surely, it cannot be said that Chartwell is not in the "neighborhood" of the subject property and indeed, it can well be said that the subject property is "in" the Chartwell *subdivision* as defined in the Anne Arundel County Code and as recognized by the Commission.

If it be assumed, *arguendo*, that the *caveat* at the end of section 35-115(g)(3) could possibly indicate a restricted construction of the unlimited words "private community beach" in section 35-38 when the original zoning ordinance was passed on July 1, 1952, it would seem clear that the provisions of section 32-23 which were originally added by the ordinance of July 14, 1953, would make such assumed original construction ineffective as the broader definition of "subdivisions" would be clearly applicable after the passage of the ordinance of July 14, 1953. See *Boyer v. Thurston,* 247 Md. 279, 292-93, 231 A. 2d 50, 57 (1967).

The majority states that the language at the end of section 35-115(g) suggests that the legislative body by use of this language "intended private community beaches and swimming pools to be located within or adjacent to the subdivisions which they

serve." The word *"private,"* however, is not used when referring to "community beaches or swimming pools" and this omission is most significant. Section 35-115(g)(1)(2) and (3) provide for a special exception for *"public* amusement parks or beaches or swimming pools," and not for *private* community beaches. Section 35-115(g)(1) provides that the public beach may be authorized in any commercial district; (2) requires that the plans for the public parks, beaches or swimming pools "indicate adequate facilities, parking areas and design," and (3) contains a requirement that "in the judgment of the board of appeals, there will be no injury to the public welfare or health by reason of hazard of traffic, proximity to populated areas or other circumstances." The provision already mentioned, i.e., "The above shall not apply to community beaches or swimming pools in and for bona-fide residential subdivisions," then follows. This language was most likely inserted to indicate that the parking provisions, the finding of no injury by the board of appeals, and the requirement of a special exception did not apply to *public* community beaches or swimming pools when they were located in and for bona-fide residential subdivisions, as such subdivisions would already have been, or would be required to be, considered and approved by the planning and zoning authorities of the county and adequate provision for parking and other requirements had been, or would be, taken care of in this authoritative way. It was, therefore, not necessary or desirable to require a developer of a bona fide residential subdivision in which there was a public amusement park, beach or swimming pool to be required to apply for a special exception when the factors to be considered had been, or would be, determined by the county planning and zoning authorities. In short, the language in the last sentence at the end of section 35-115(g)(3) was intended to limit the application of the language in subparagraphs (1) (2) and (3) of that subsection, and was not intended to limit the scope of the language in section 35-38(e) in regard to *private* community beaches.

Nor is the alleged policy of "community control" by property owners adjacent to the beach as opposed to such control by those somewhat removed from the beach, but within the general neighborhood, an important consideration in view of the other

uses permitted in an agricultural district. "Churches," which are permitted in such a district need not be controlled by persons owning land contiguous or adjacent to the land on which the church is located and, most certainly, the use of a church is not restricted to contiguous or adjacent property owners. In fact, a church is generally open to all who wish to attend regardless of the location of their property and from any area whatever. Indeed, if a church were erected on the subject property, all persons living in Columbia in Howard County could lawfully attend if they could physically find room in the church. The same observations may be made in regard to hospitals not of the type mentioned in section 35-114(r) and golf courses. Yet, churches, golf courses and such hospitals are permitted as of right by section 35-38(e). None of these clearly permitted uses requires or contemplates control by adjacent or contiguous property owners and such control would be most unusual. As these permitted uses are mentioned in the same subsection which permits private community beaches, it seems reasonable to conclude that control by adjacent, contiguous, or surrounding property owners is not required for private community beaches. Indeed such a requirement for private community beaches with the permitted uses of churches, golf courses and hospitals without such a requirement might well be unreasonable, arbitrary and capricious and, therefore, unconstitutional and void as a denial of due process of law. *City of Baltimore v. Cohn,* 204 Md. 523, 529, 105 A. 2d 482 (1954); *Anne Arundel County v. Ward,* 186 Md. 330, 341, 46 A. 2d 684, 165 A.L.R. 816 (1946). See also Rathkopf, *The Law of Zoning and Planning* (3rd ed.) 7-8, 7-9. The language should be so construed that this unreasonable and possible unconstitutional result would not be present. *Higgins v. City of Baltimore,* 206 Md. 89, 98, 110 A. 2d 503 (1955).

*Gilbert v. Town of Hamden,* 135 Conn. 630, 68 A. 2d 157 (1949) is clearly distinguishable from the situation in the case at bar. In *Gilbert* the zoning ordinance of the Town of Hamden, Connecticut in a single-family residence zoning permitted a "community house or club, except where the principal activity is one customarily carried on as a business." The Gilbert Company, a corporation having a factory and place of business

in New Haven, leased a tract of 150 acres called Paradise Park, in the single-family residence zone and made the improvements on the land suitable for use as a country club, with the regular membership in the club limited to the employees of the Gilbert Company. To augment the income of the club, its facilities were licensed to organizations and persons not members. The property was used for various recreational facilities. Soft drinks, cigarettes, and sandwiches could be purchased. The Supreme Court of Errors of Connecticut held that this use of the premises was not that of a community club within the provisions of the zoning ordinance. It seems clear that membership in a club limited to factory employees would hardly make the club a "community" club on any definition of "community."

I am not impressed by the observation that unless the language is construed as has been done by the majority, a large community removed by many miles from the beach property could use the property as a private community beach. In the first place, this is not the situation in the present case (and it would not be the case if "community" was equated with the broader view of "subdivision" since the beach would have to be "suitably located.") The word "community" has as one of its definitions in Webster's New Collegiate Dictionary, 1961 Edition (the Anne Arundel County Code establishes as a source of definitions not specifically provided in the Code the 1949 Edition which is not readily available) : "Society at large; the people in general; restrictively, *the people of a particular region or the region itself.*" (Emphasis supplied). This definition could possibly limit to a degree the scope of the user to persons reasonably near the subject property as part of the general neighborhood. If this were the proper construction, the administrative officials could—as they have in this case—determine that the residents of Chartwell are within the scope of the word "community" as so defined. The alleged difficulty suggested would thus disappear.

Secondly, Webster's also gives as one of the definitions of "community" the following: "A body of people having common organization or interests or living in the same place under the same laws; * * *." If such a community is established without regard to its location so far as the subject property is concerned,

so that a large community removed many miles from the beach property could indeed use the subject property as a private community beach, I find it difficult to perceive what is wrong with that lawful use of private property. Surely if there were no zoning restrictions, a private property owner could use his beach for this purpose, limited only by the right of adjacent property owners to be free from the use of the property as a nuisance. If large numbers of raucous, unruly and ill-behaved persons did use the property, doubtless a court of equity could determine whether the conduct complained of amounted to a nuisance and, if so, enjoin such conduct.

It must be constantly kept in mind that the *normal* legal situation permits the *free use* of private fee simple property, rather than the restriction of that free use. There may only be governmental restriction of this free use if there is a reasonable connection between the restriction and the protection of the public health, safety, security, morals and general welfare. The restriction on the free use of private property is in derogation of the common law right to use private property so as to realize its highest utility, and such restrictions are not to be extended by implication to cases not clearly within the scope of the purpose and intent manifested by the language of the ordinance. Our predecessors have so held. *Landay v. Zoning Appeals Board,* 173 Md. 460, 466, 196 A. 293, 114 A.L.R. 984 (1938). To me, the language is clear, but, when a strict construction is required, it is entirely and abundantly clear that the language does not prohibit the Chartwell community's use of the subject property.

But even if it be assumed *arguendo,* that the words were ambiguous it seems clear to me that the construction of the words by the zoning administrative authorities of Anne Arundel County, a construction long continued and without exception, that the use by the Chartwell community is not prohibited, should lead us to follow that construction. This is a well established course of conduct when language is considered to be ambiguous. *Department of Tidewater Fisheries v. Sollers,* 201 Md. 603, 615, 95 A. 2d 306, 311 (1953). See *Shapiro v. City of Baltimore,* 230 Md. 199, 216, 186 A. 2d 605, 614 (1962).

My views in other situations involving the construction of statutes have been previously expressed. See my dissenting

96

opinions in *Baltimore County Board of Trustees of the Employees' Retirement System v. Comes,* 247 Md. 182, 191 et seq., 230 A. 2d 458, 463 (1967) and *Comptroller v. American Cyanamid Co.,* 240 Md. 491, 508 et seq., 214 A. 2d 596, 606 (1965). I am still convinced that these views are sound and should be applied in the present case.

I would reverse the order of the Circuit Court.