532 A.2d 716

**BOARD OF COUNTY COMMISSIONERS OF WASHINGTON COUNTY, et al.**

v.

**Ernest H. SCHUHLY, et ux.**

**No. 186, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Nov. 6, 1987.

Roger D. Redden (G. Richard Dent, Baltimore, and David K. Poole, Jr., Co. Atty., Hagerstown, on the brief), for appellant, Board of County Com'rs of Washington County.

William C. Wantz (Kaylor & Wantz, Hagerstown, on the brief), for appellant, Morrison.

Thomas A. Wade of Hagerstown, for appellant, South Valley Corporation.

John H. Urner (Urner, McGrory, Nairn, Barton, & Schaefer, on the brief), Hagerstown, for appellees.

Argued before WILNER, ALPERT and WENNER, JJ.

WILNER, Judge.

We shall conclude in this appeal that the Circuit Court for Washington County erred in exercising its general equity jurisdiction to nullify a zoning decision of the Board of County Commissioners from which no timely appeal had been taken.

On April 22, 1985, Agnes Elliott filed an application to rezone three parcels of land in the Sharpsburg area of Washington County, near the Antietam battlefield. One parcel, consisting of about 20.5 acres located on the south

side of Md. Route 34, was known as the South Valley property. It was zoned agricultural; Ms. Elliott sought to have 12 acres of it rezoned to business-general and the remaining 8.5 acres rezoned to residential-multifamily. The other two parcels, known as the Morrison property, are on the north side of Route 34. Together, they comprise approximately 1.8 acres that Ms. Elliott asked be rezoned from conservation to business-general.

The application was duly advertised and set for joint hearing on June 10, 1985, before the County Planning Commission and the Board of County Commissioners. Three people spoke on the application. Mr. Papa, representing the property owners, described their plans to construct a restaurant, a motel, and multifamily housing on the South Valley property, and a pharmacy and convenience store on the Morrison property. He asserted:

> "The proposed changes, as submitted, would provide business services to Sharpsburg away from the historic area ... that was brought out earlier this evening. It would be on a roadway which can adequately serve the inter-regional traffic that serves this immediate area. Use of an existing water system and a sewerage package-treatment plant would provide for the adequate health facilities needed. This location is ideal for the people services being provided further south over in West Virginia as well as serving the students and faculty housed over at Shepherd College."

(Ellipses in original.)

Mr. Papa stressed the fact that Sharpsburg was in need of the proposed commercial services and that the site under consideration was "ideal" for those services because it was "away from the historical areas." The need for a restaurant and a motel was confirmed by William Phillips, a real estate broker in the area.

One person—John Ritchie—opposed the project, claiming that the site had historical significance and that the project "will have a snowballing effect."

The last comprehensive rezoning in the area was in 1973, and, although little was said on the matter during the public hearing, the issue was whether there had been a mistake made at that time or, if not, whether there had been a change in the neighborhood since then. On June 27, 1985, the staff of the County Planning Commission recommended denial of the application on the bases that (1) there had been no demonstration of either mistake or change and (2) the proposed rezoning would "conflict with specific policies of the County Comprehensive Plan and Zoning Ordinance." The Planning Commission itself adopted that view with respect to the South Valley property and recommended denial of the application as to it. It recommended approval of the application to rezone the Morrison property, however, opining that there had been a mistake in the 1973 zoning and that business-general was an appropriate zoning for that property.

On August 13, the County Commissioners voted unanimously to grant the requested business-general rezoning for the Morrison property and 12 acres of the South Valley property and to deny the residential-multifamily zoning sought for the remaining 8.5 acres of the South Valley property. The Commissioners made no specific findings of fact in support of those decisions, however. The minutes of their meeting state only that:

"After due consideration of the matters and facts adduced at the Public Hearing held on June 10, 1985, the comments submitted in writing within the ten (10) day period following said Hearing, and the recommendations submitted by the Planning Commission, a MOTION was made by Commissioner Snook, seconded by Salvatore to APPROVE of the application of Agnes Elliott, Frederick W. Morrison and Eastern State Soilbuilders, Inc. for the reclassification of land located at the south end of Sharpsburg off Maryland Route 34 consisting of 22.3 acres and 8.5 acres to RM (Residential Multi-family) and 13.8 acres to BG (Business General) on the basis of a mistake in the original zoning.

MOTION made by Commissioner Roulette, seconded by Salvatore to amend the aforegoing Motion to APPROVE of .8 acres owned by Eastern State Soilbuilders, Inc., 1 acre owned by Frederick W. Morrison and 12 acres owned by Agnes Elliott to BG (Business General) and to DENY the rezoning for 8.5 acres owned by Agnes Elliott to RM (Residential, Multi-family). Unanimously approved.

The Question was called and the Original Motion, as amended, was Unanimously approved."

Ernest and Doris Schuhly own a 29–acre parcel on the south side of Route 34 contiguous to the South Valley property and across the road from the Morrison property. They contracted to buy the land in June, 1984, acquired title in December, 1984, and actually took possession in March, 1985. Whether they actually knew about the application, filed in April, 1985, is not revealed in the record; it is clear, however, that they had proper constructive notice of them and that they did not participate in the proceedings before the Planning Commission or the County Commissioners. On April 1, 1986—7½ months after the order partially granting the application—the Schuhlys, through counsel, appeared before the Commissioners and asked that they "repeal" the rezoning. Two weeks later, no further action having been taken by the Commissioners, the Schuhlys filed this action in Circuit Court.

Their complaint sought injunctive relief—that the court direct the County "to set aside the rezonings" and restrain the owners of the rezoned properties from using them for "any use other than uses pursuant to the requirements of the Agriculture or Conservation Districts." As grounds for that extraordinary relief, they averred that (1) the Commissioners failed to make findings of fact, as required by Md.Code Ann. art. 66B, (2) the properties are not served by public sewer facilities, as required for business-general zoning by the county zoning law, (3) the rezonings are void as "contrary to the public interest," (4) there was no substantial evidence in the record to show either mistake in the original zoning or subsequent change in the neighborhood,

(5) the rezoning constitutes illegal spot zoning, and (6) it has greatly depreciated their property.

After a hearing on the several motions to dismiss filed by the county and the property owners, the court granted the relief sought by the Schuhlys. It made no determination, and indeed never apparently considered, whether the record contained evidentiary support for the decision of the Commissioners. The sole articulated basis for the court's conclusion that the decision was unlawful was the conceded failure of the Commissioners to make specific findings of fact in support of their decision. Both State and county law require that such findings be made, said the court, and a decision made without them is essentially *ultra vires*. Because the order was thus beyond the power of the Commissioners, the Schuhlys were not restricted to utilizing the normal avenue of judicial review but could instead invoke the general equitable jurisdiction of the court.

Md.Code Ann. art. 66B, § 4.01(a) contains a grant of general authority to county legislative bodies to regulate and restrict "the location and use of buildings, signs, structures and land for trade, industry, residence or other purposes." They exercise this authority through the adoption of zoning regulations which, § 4.05(a) provides, "may from time to time be amended, supplanted, modified or repealed." Section 4.05(a) further provides, however, that:

"Where the purpose and effect of the proposed amendment is to change the zoning classification, the local legislative body shall make findings of fact in each specific case including, but not limited to, the following matters: population change, availability of public facilities, present and future transportation patterns, compatibility with existing and proposed development for the area, the recommendation of the planning commission, and the relationship of such proposed amendment to the jurisdiction's plan; and may grant the amendment based upon a finding that there was a substantial change in the character of the neighborhood where the property is located or

that there was a mistake in the existing zoning classification."

This requirement that reclassification decisions be accompanied by specific findings of fact in the enumerated areas is also included in the Washington County zoning law adopted pursuant to the general authority of § 4.01(a). See Washington County Zoning Ordinance, § 27.3.

Section 4.08(a) of art. 66B provides for judicial review of certain zoning decisions. It states, in relevant part, that "[a]ny person ... aggrieved by ... a zoning action by the local legislative body ... or any taxpayer ... may appeal the same to the circuit court of the county. *Such appeal shall be taken according to the Maryland Rules as set forth in Chapter 1100, Subtitle B."* (Emphasis added.) The Ch. 1100, Subt. B Rules require, among other things, that an appeal be filed within 30 days "from the date of the action appealed from," unless, upon application made within that 30-day period, and for good cause, the court extends that time. Md. Rule B4.

Section 4.08(a) means what it says. If the zoning action sought to be reviewed is one that falls within its ambit, as a general rule judicial review is available only in accordance with the Ch. 1100, Subt. B Rules and not through original actions invoking a court's general equity or mandamus jurisdiction. The principle has been oft-stated that "when an administrative remedy is statutorily directed, the nature of the relief specified by the enactment must ordinarily be utilized as a prerequisite to court action." *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 308, 407 A.2d 738 (1979), citing *Md. Nat'l Cap. P. & P. v. Wash. Nat'l Arena,* 282 Md. 588, 286 A.2d 1216 (1978), and *State Dep't of A. & Tax. v. Clark,* 281 Md. 385, 380 A.2d 28 (1977); *see also Prince George's Co. v. Blumberg,* 288 Md. 275, 418 A.2d 1155 (1980), *cert. denied* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981).

As *Harbor Island Marina* points out, however, there is a limited exception to that requirement, which has become

known as the "constitutional exception." That exception, said the Court, "permits a judicial determination without administrative exhaustion when there is a direct attack upon the power or authority (including whether it was validly enacted) of the legislative body to adopt the legislation from which relief is sought." 286 Md. at 308, 407 A.2d 738. *See also Richmark Realty v. Whittlif,* 226 Md. 273, 173 A.2d 196 (1961); *Nottingham Village v. Balto. Co.,* 266 Md. 339, 292 A.2d 680 (1972).

Those cases well illustrate the circumstances in which the "constitutional exception" applies. In *Harbor Island Marina,* the issue was whether the zoning authority granted by art. 66B empowered the county to regulate navigable waters within its boundaries. The challenge made in that case was not to any procedural defect or omission in the zoning action itself but to the underlying authority to enact any zoning regulation of navigable waters. Similarly, in *Nottingham Village,* the appellants contended that the zoning ordinance at issue was not adopted in compliance with requirements in the county charter. *Richmark Realty* involved spot zoning that, on its face, was arbitrary.

The exception applied in these cases is indeed a limited one. In *Goldstein v. Time–Out Family Amusement,* 301 Md. 583, 590, 483 A.2d 1276 (1984), the Court held that "to come within the 'constitutional attack' exception to the general rule concerning the exhaustion of administrative remedies, the attack must be made to the constitutionality of the statute as a whole and not merely as to how the statute has been applied." *See also Joseph H. Munson Co. v. Sec. of State,* 294 Md. 160, 171, 448 A.2d 935 (1982); *National Asphalt v. Prince Geo's Co.,* 292 Md. 75, 77 n. 2, 437 A.2d 651 (1981).

The case before us presents not even the pretense of such an attack. The Schuhlys do not challenge either the statute itself or the authority of the Commissioners to act under it. Their complaint is simply that the Commissioners failed to follow the statutory prerequisites, principally the direction to make specific findings in support of their decision.

Prior to 1970, that kind of attack was indeed made from time to time through an original action in court, for the law did not then restrict judicial review to the procedure set forth in the Ch. 1100, Subt. B Rules. *See Board v. Stephans,* 286 Md. 384, 408 A.2d 1017 (1979). As the *Stephans* Court pointed out, however, the law was changed in 1970 at the urging of the Maryland Planning and Zoning Law Study Commission specifically to preclude judicial review of reclassification decisions through original actions in equity. In its Report to the Legislature, the Commission recommended that judicial review be limited to the administrative appeal process, observing that:

"It can be argued that under the present system appeals from reclassification decisions may be launched in equity at any time. This has proven to be a detrimental factor to most persons concerned with such an action. The appeal process to be used, Chapter 1100, Subtitle B, Maryland Rules, requires noting of an appeal within thirty days and filing of the appeal within another ten days. This is ample time to bring an appeal for review (i.e. if a person is aggrieved by a decision it is [i]ncumbent upon him to react within a reasonable period of time)."

Most of the cases cited by the Schuhlys in support of their position arose prior to 1970 and are thus of little relevance on that account alone. *See, for example, Crozier v. Co. Comm. Pr. George's Co.,* 202 Md. 501, 408 A.2d 1017 (1953). Some are inapposite for other reasons as well. *See Delbrook Homes v. Mayers,* 248 Md. 80, 234 A.2d 880 (1967), which was not a challenge to a zoning decision but rather an action to enjoin a neighbor from using its property in violation of the zoning law.

We do not mean to suggest that the failure of the County Commissioners to make and articulate specific findings of fact (or to comply with other statutory requirements) is of no consequence. Had a proper appeal been taken, that omission would have compelled a remand. *See Pistorio v. Zoning Board,* 268 Md. 558, 302 A.2d 614 (1973); *Ocean Hideaway Condo. v. Boardwalk Plaza,* 68 Md.App. 650,

515 A.2d 485 (1986). But a defect of that kind, however egregious, does not bring the case within the "constitutional exception" and permit a collateral attack on the reclassification decision. If it did, we would be back to the system in place before 1970, for it would subject nearly every reclassification to collateral attack; any claim of evidentiary insufficiency as to change, mistake, or any other prerequisite, and nearly any claim of procedural irregularity would apparently suffice.

The Legislature provided an effective remedy for what occurred here. The Schuhlys failed to use it. They—not the county and the applicant—must suffer the consequence.

JUDGMENT REVERSED; APPELLEES TO PAY THE COSTS.