## KENT COUNTY PLANNING INSPECTOR *v.* ABEL AND ABEL, t/a GALENA BOAT YARD

[No. 206, September Term, 1966.]

*Decided April 12, 1967.*

*Motion for rehearing filed May 12, 1967, denied May 30, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

*L. Robert Evans,* with whom was *Walter Litvinuck* on the brief for appellant.

*Marvin H. Smith,* with whom was *A. Parks Rasin, Jr.* on the brief for appellees.

FINAN, J., delivered the opinion of the Court.

Appellee Eva C. F. Abel, respondent below, owns a tract of land at the confluence of the Sassafras River and Swantown Creek in Kent County, Maryland. Since 1956, appellee Eva C. F. Abel and her son, appellee C. Robert Abel, respondent below, trading as Galena Boat Yard, have operated a boat yard, marina and boat repair, service and storage business on the land in question. Prior to the commencement of the construction work, the operation included 11 large and 30 small slips in addition to the boat yard. The new construction is in contemplation of an additional 30 large slips. Pursuant to the Kent County Zoning Ordinance, adopted April 17, 1962, the property was zoned commercial. Under the "C" or commercial zoning classification a marina or boat livery station is a permitted use, Art. X, § 6, Kent Co. Zon. Ord.; however, such marinas or boat livery stations may not include "boat repair yards, marine railways, warehouses and like uses unless five hundred (500) feet from any 'R' District." Art. X, § 6, *supra.* Since appellees' land is located within 500 feet of a "R" district, their operation constituted a non-conforming use; this was admitted in appellees' pleadings.

On May 20, 1963, appellee Eva C. F. Abel applied to the Kent County Planning Commission for a building permit to erect a bulkhead and covered slips on the subject property at an estimated cost of $20,000; the permit was issued on June

5, 1963. Prior to the obtaining of the permit from the Planning Commission, the appellee had obtained authorization for the improvements from the corps of Engineers of the United States Army, which specifically stated "nor does it [United States authorization] obviate the necessity of obtaining State assent to the work authorized." According to the testimony of appellee Robert Abel, work pursuant to the permit was commenced in 1963.

On November 29, 1965, the president. of the Kent County Planning Commission sent appellee Robert Abel a letter informing him that his project was in violation of the zoning ordinance and that an application for this work had to be filed within 10 days with the Kent County Board of Appeals. The letter also advised appellee to stop work immediately. A second letter was sent to appellee by the president on December 9, 1965. This letter acknowledged the fact that a permit was issued by the Commission on June 5, 1963, but informed appellee that the "permit was good for a period of twelve months and if not used within that time an application for extension (sic) must be submitted." The letter further advised appellee to stop work until a new permit has been issued. Appellee Robert Abel testified that he did not make an application to the Board of Appeals because he already had a permit and that he was not going to pay the fifteen dollar application fee.

On January 21, 1966, appellant-complainant below, Kent County Planning Inspector, pursuant to Art. XVIII, Kent Co. Zon. Ord. (as amended Sept. 24, 1963) filed a bill of complaint in the Circuit Court for Kent County, praying that the appellees be enjoined from proceeding with the construction of the improvements on their property. The bill alleged that the permit granted by the Planning Commission on June 5, 1963, was issued in violation of the Zoning Ordinance. Appellant's allegation that appellees' permit was void is based on the premise that since appellees are operating a non-conforming use, the Kent County Board of Appeals pursuant to Art. IV, § 4.02 of the Zoning Ordinance, and not the Planning Commission, has the sole power to authorize enlargement, extension or alteration of the existing non-conforming use in conformity with the limited provisions in the zoning ordinance.

A hearing was held on March 24 and 25, 1966. Appellant tes-

tified that he visited the property in the early part of 1965 and found no bulkhead erected at that time. Appellant further testified that he visited the property twice in 1966. In January of 1966, he observed earth being moved to where the bulkhead was to be built and during a visit approximately six weeks prior to the hearing he noted that a portion of the bulkhead had been constructed. F. Alexander Clement, a contiguous property owner, testified that in 1966 appellees built "200 and some odd feet" of bulkhead and piling extending into the river "115 to 120 feet." Appellee Robert Abel testified that in 1963 work on a retainer wall had been started and in 1964 timbers for the bulkhead were hauled to the property. At the time of the hearing, 120 feet of bulkhead parallel to the shoreline had been completed and an additional 160 feet of piles had been driven. Appellees had spent for the work done pursuant to the permit of June 5, 1963, up until the date of the filing of the bill of complaint, a total of $13,276. On cross-examination Abel testified that bulkhead construction began in 1965, but that filling-in operations began in 1963 and continued through 1964. Questioning by the chancellor elicited testimony from Abel that after December 9, 1965, the date of the Board's second letter to appellee, work continued to the extent that 35 feet of retaining wall was erected extending into the Sassafras River, 120 feet of bulkhead constructed parallel to the shoreline and 160 feet of piling driven. Abel explained that he continued work after December 9, 1965, in order to comply with an "ultimatum" of the Army Engineers.

The lower court in its opinion stated, "the Doctrine of Equitable Estoppel should apply in this case * * *." Its rationale being, "I do think it applies because the Defendant, a property owner, started to do something under an invalid permit after having consulted the agency which ordinarily would have been the agency to consult."

We do not agree with the theory of the law expressed by the learned chancellor as applied to the facts of this case.

The correct principle of law to be applied to a situation such as presented by the instant case was set forth by Judge Prescott (later Chief Judge) in *Berwyn Heights v. Rogers,* 228 Md. 271, 179 A. 2d 712 (1962), a case wherein the property owner (defendant) had received building permits from the building

inspectors of both the Town of Berwyn Heights (complainant) and Prince George's County. Construction of a dwelling house on a corner lot in violation of side-yard restrictions was well advanced when the injunctive relief was sought. Judge Prescott cited numerous decisions of this Court, supporting the views expressed in his opinion and stated at pp. 279-80:

> "Finally, the appellee claims, without the citation of authority, that the appellant is estopped from prosecuting the suit by the fact that it and the county issued him building permits, and he has expended substantial amounts of money in partially constructing the dwelling. Some authorities hold that the principle of estoppel does not apply against a city, but the majority rule is to the effect that the doctrine of estoppel in pais is applied to municipal, as well as to private, corporations and individuals, at least where the acts of its officers are within the scope of their authority and justice and right require that the public be estopped. *Rose v. Baltimore,* 51 Md. 256; *Camden Sewer Co. v. Salisbury,* 162 Md. 454, 461, 160 A. 4; 9 McQuillin, *Municipal Corporations* (3rd ed.), § 27.56; 3 Dillon, *Municipal Corporations* (5th ed.), page 1893; Anno., 1 A.L.R. 2d 338; cf. *Gontrum v. City of Baltimore,* 182 Md. 370, 35 A. 2d 128. And it has been held that municipalities may be estopped by reason of the issuance of permits. The authorities are collected in 2 Metzenbaum, *Law of Zoning,* (2nd ed.), beginning at page 1188. However, the cases and text-writers very generally state that a municipality is not estopped to set up the illegality of a permit. *Lipsitz v. Parr,* 164 Md. 222, 164 A. 743; 2 Metzenbaum, *op. cit.,* pp. 1143-1146, 1191, 1192; 1 Metzenbaum, *op. cit.,* pp. 163-171, 256-259, 466, 590, 591; 8 McQuillin, *op. cit.,* § 25.153; *Vogt v. Borough of Port Vue,* 85 A. 2d 688 (Pa. Super.); *Adler v. Department of Parks & Public Property,* 89 A. 2d 704 (N. J. Super.). And the issuance of an illegal permit creates no "vested rights" in the permittee. 2 Metzenbaum *op. cit.,* pp. 1185, 1186, 1193-1195; 8 McQuillin, *op. cit.,* § 25.153; *Colonial*

*Beacon Oil Co., Inc. v. Finn,* 283 N. Y. S. 384; *Vogt v. Borough of Port Vue, supra;* cf. *Lipsitz v. Parr, supra.* We have held above that the permits issued to the appellee were in violation of the zoning ordinance; consequently they were unlawful and did not estop the appellant from prosecuting this suit."

*Lipsitz v. Parr,* 164 Md. 222, 164 A. 743 (1933), involved the issuance of a building permit authorizing the applicant to construct an ice house in a zone where such a building was specifically prohibited by law. The applicant set up the defense of estoppel against the city's efforts to obtain an injunction to enjoin the work. This Court, speaking through Judge Parke, said at pp. 227-28:

"A permit thus issued without the official power to grant does not, under any principle of estoppel, prevent the permit from being unlawful nor from being denounced by the municipality because of its illegality. In the issuance of permits pursuant to the ordinance at bar, the municipality was not acting in any proprietary capacity nor in the exercise of its contractual powers, but in the discharge of a governmental function through its public officers of limited authority, and the doctrine of equitable estoppel cannot be here invoked to defeat the municipality in the enforcement of its ordinances, because of an error or mistake committed by one of its officers or agents which has been relied on by the third party to his detriment. *Every one dealing with the officers and agents of a municipality is charged with knowledge of the nature of their duties and the extent of their powers, and therefore such a person cannot be considered to have been deceived or misled by their acts when done without legal authority.*" (Emphasis supplied.)

*M. & C. C. v. Chesapeake,* 233 Md. 559, 197 A. 2d 821 (1964); 8 McQuillin, *Municipal Corporations,* (3rd ed. 1965 Rev. Vol.), § 25.153 p. 489; 2 Dillon, *Municipal Corporations,* (5th ed. 1911) § 777.

The appellees make an attempt to distinguish *Lipsitz* from

the instant case on the grounds that in *Lipsitz* the city acted to revoke the illegally issued permit within 23 days after its issuance, whereas in the case at bar such action was not taken until two and one-half years had elapsed. Any merit such a contention might have is dissipated by the fact that the record reveals that on December 9, 1965, when the invalidity of the permit was first called to the appellees' attention, only 35 feet of the retaining wall had been completed and since that time an additional 35 feet of retaining wall and 120 feet of bulkheading plus 160 feet of double piling have been added. Obviously, the greater portion of the project was undertaken after the appellee had been placed on notice that the Board not only questioned, but denied, his right to proceed in violation of the zoning regulations. It should also be noted that in *Lipsitz* the unlawful permit was at least issued by an agency that was the proper official body authorized to issue building permits, whereas in the instant case the unlawful permit was issued by an agency which had no authority whatsoever to issue the permit thereby compounding the flaw in an already invalid act. See 2 Rathkopf, *Law of Zoning and Planning* (3rd ed.), Ch. 56, § 1 p. 56-1.

In *Gontrum v. City of Baltimore*, 182 Md. 370, 375, 35 A. 2d 128, 130 (1943), this Court pointed out that: "It is a fundamental principle of law that all persons dealing with the agent of a municipal corporation are bound to ascertain the nature and extent of his authority." *White v. County Comm'rs*, 227 Md. 573, 577, 177 A. 2d 905, 907 (1962); *Inter-City Co. v. Balto. County*, 218 Md. 80, 85, 145 A. 2d 263, 266 (1958); 10 McQuillin, *Municipal Corporations* (3rd ed. 1966 Rev. Vol.) § 29.04.

The appellees cite cases from Illinois and Pennsylvania and general statements from 28 Am. Jur. 2d "Estoppel and Waiver," § 130 p. 797 to the effect that:

> "while, ordinarily, the doctrine of equitable estoppel is not invoked against a municipal corporation in the exercise of governmental functions, exceptions are sometimes made where right and justice demand, as where there have been positive acts by municipal of-

ficers which have induced action of a party and it would be inequitable to permit a retraction of such acts."

We do not find these authorities persuasive when applied to the facts of the instant case, especially in view of the Maryland decisions in *Berwyn Heights, Lipsitz* and *Gontrum, supra.* Nor do we find that special circumstances exist in this case to justify the application of estoppel *in pais;* our feeling in this regard is strengthened by the action of the appellees in disregarding the notice given by the Kent County Planning Commission in December of 1965, at which time the greater portion of the work remained to be done. Nor do we find the opinion of the United States Supreme Court in *Essex v. New England Tel. Co.*, 239 U. S. 313 (1916), cited by the appellees, analogous to the case at bar. In *Essex,* the city fathers had for over twenty years acquiesced in an utility company's constructing, maintaining and operating its lines and service through, over and along the streets of the city. In the instant case the expansion of the nonconforming use is still in progress.

The lower court in its decree provided that the appellees should be permitted to "fully complete the 280 feet of bulkhead already in process of erection (120 feet of bulkhead and 160 additional feet of piling now in place) and to complete the erection of covered slips (otherwise described as boathouses over slips) along the entire 280 feet, * * *." As we have hereinbefore stated, we cannot agree with the court's reasoning in this case.

Subsection 2 of § 4.02 of Article IV of the Kent County Zoning Ordinance provides that the Board of Appeals may authorize an extension of a nonconforming use not to exceed 35% of the existing use.[1] The Ordinance, in providing for an exten-

---

1. "PROVIDED: No such building, structure or use shall be enlarged, extended, substituted, or structurally altered, unless the use is changed to one permitted in the district except as follows, when authorized by the Board:

* * *

"2. An extension or completion of a building or structure devoted to a non-conforming use upon a lot, occupied by such building or structure or upon an adjoining lot owned by the same party, where such extension is necessary and

sion, refers to the extension of the floor area of a nonconforming building, however, the lower court in an exchange between the chancellor and counsel interpreted this to apply to water and land area as well, stating:

> "The issue it seems to me from what I've heard at this point is first, you have a nonconforming use. No question about that. Under the Ordinance you could extend that thirty-five per cent, so the real question * * * is whether the owner of the boat yard needed to get permission from anybody to replace what he had or to make repairs or to extend it thirty-five per cent * * *."

It is difficult to see how Subsection 2 of § 4.02 of Article IV could be broadened in its application to cover water and land areas, but this issue is not before us, as the court below in its opinion made no reference to any possible extension of the use under Subsection 2, § 4.02 of Article IV, but relied entirely on the doctrine of estoppel, a reliance which as heretofore expressed we believe to be erroneous. However, there may be valid grounds for affording the appellees a measure of relief other than those relied upon in the court below.

It should be borne in mind that the operation of a marina in a commercial district is not a prohibited use under the provisions of the Ordinance. It is the coupling of the marina with a boat repair yard in a commercial district, where the installation is within 500 feet of an "R" district, that renders it noxious. (Actually in this case all of the land contiguous to the appellees' property is in an "R" district.) The record in this case is devoid of any testimony delineating the specific activities allocated to separate areas within the appellees' operation. Counsel for both parties and the court apparently viewed the appellees' operation as an entity, which so considered, they designated as a nonconforming use.

---

incidental to the existing use of such building, provided (1) the non-conforming floor area of the existing building shall not be extended by over 35%, and (2) the extension is made within five (5) years of the date when the use became nonconforming."

Although the question of the divisibility of this use and the consideration of any extension as it may be applied to the conforming use or marina operation, as distinguished from the nonconforming use or boat yard operation, was not considered in the court below and is not before this court, yet the appellees in their argument on appeal stressed the ambiguity of the language used in § 6 of Article X of the Ordinance.

Also, in *Jahnigen v. Staley*, 245 Md. 130, 225 A. 2d 277 (1967) we again recognized the right of a property owner to intensify a nonconforming use. Judge Marbury, speaking for the Court, said at 225 A. 2d 281:

> "The basic premise underlying zoning regulations is to restrict rather than expand non-conforming uses. *Phillips v. Zoning Commissioner*, 225 Md. 102, 169 A. 2d 410; *Grant v. Mayor and City Council of Baltimore*, 212 Md. 301, 129 A. 2d 363; *Colati v. Jirout*, 186 Md. 652, 47 A. 2d 613. However, an intensification of a non-conforming use is permissible so long as the nature and character of the use is unchanged *and substantially the same facilities are used. Phillips v. Zoning Commissioner, supra; Nyburg v. Solmson*, 205 Md. 150, 106 A. 2d 483, 46 A.L.R. 2d 1051."
> (Emphasis supplied)

Cf. *Abe Feldstein t/a Abe Feldstein Junkyard v. LaVale Zoning Board*, 246 Md. 204, 227 A. 2d 731 (1967).

There was no effort made in the court below to demonstrate what, if any, of the new construction (such as perhaps the covering of the slips) might have been more in the nature of an intensification of the nonconforming use, rather than an extension or expansion of it, and our decision reversing the chancellor is without prejudice in this regard.

*Decree reversed, costs to be paid by the appellees.*