Beatrice **BERNSTEIN** and Morton Bernstein, co-Administrators of the Estate of David C. Bernstein

v.

The **TOWNSHIP OF LOWER MORELAND**; Donald R. Hessing; James Orloff; and Paul T. Dickinson, individually and as Officers of The Township of Lower Moreland; Robert H. Hamilton, individually and as Chief of Police of The Township of Lower Moreland; William McAlister and Carl A. Molt, individually and as Detectives of The Township of Lower Moreland.

Civ. A. No. 84–3584.

United States District Court, E.D. Pennsylvania.

Feb. 21, 1985.

John Rogers Carroll, Philadelphia, Pa., for plaintiff.

Michael Saltzburg, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is defendants' motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. For the reasons stated herein, defendants' motion will be granted.

### I. FACTS

On April 4, 1982, the Sound Odyssey Warehouse in Huntington Valley, Pennsylvania, was burglarized. At about midnight of that same day, defendants Donald R. Hessing, James Orloff, and Paul Dickinson, who were police officers of the Township of Lower Moreland ("Lower Moreland"), engaged in a high speed automobile chase. It is alleged that the persons in the fleeing automobile were David C. Bernstein, Scott Shaw, and Joseph Kindler, Jr. The court presumes that the police sought these three persons as suspects of the aforementioned burglary and in connection with the investigation of the burglary.

The suspects escaped during the chase, but Bernstein and Shaw were arrested in the early morning of the next day in Philadelphia by the Philadelphia police. Bernstein and Shaw were then returned to the Lower Moreland police. Hessing, Orloff, and Dickinson were the officers who took custody of Bernstein and Shaw for Lower Moreland and who escorted the suspects to the Lower Moreland Police Headquarters.

Later that morning, defendants William McAlister and Carl A. Molt, also officers of the Lower Moreland Police Department, questioned Bernstein. Bernstein, who did not have an attorney present, supplied information which led to the arrest of Kindler, and Bernstein agreed to testify against Joseph Kindler, Jr.

Kindler was later arrested, and the three suspects were charged with burglary.

Subsequently, the Assistant District Attorney of Montgomery County, the Lower Moreland Police Department, and Bernstein entered into an agreement whereby Bernstein would testify against Kindler in exchange for a grant of immunity to Bern-

stein and a promise by the Lower Moreland Police to provide Bernstein protection.

After this agreement was formed, Bernstein still expressed his fear of Kindler and Shaw. Bernstein was repeatedly reassured by the Lower Moreland police that Shaw was in the custody of St. Gabriel's Center for Juveniles and that Kindler was under constant surveillance. The complaint alleges that Kindler was not under surveillance by the Lower Moreland police and that Shaw had not returned after an outing from St. Gabriel's on July 4, 1982, nor had he returned up to the date of plaintiff's decedent's death on July 25, 1982. Bernstein was not informed of Shaw's failure to return to the juvenile facility nor of the lack of surveillance of Kindler.

On May 21, 1982, Bernstein was granted immunity by the Court of Common Pleas of Montgomery County. This state court order was pursuant to an application for the grant of immunity filed by an Assistant District Attorney of Montgomery County.

On or about July 25, 1982, Bernstein was confronted by Shaw and Kindler at his home. Bernstein, in the vicinity of his home, was beaten to death by Shaw and Kindler. Bernstein's corpse was then bound, weighted and thrown into a river.

This § 1983 action was brought by Bernstein's parents, coadministrators of his estate, under Pennsylvania's survival statute, 20 Pa.Cons.Stat.Ann. § 3371 (Purdon 1984). In Count 1, the plaintiffs assert that the defendants intentionally breached their duty to provide Bernstein with adequate police protection after they had undertaken to provide such protection to Bernstein. In Count 2, the plaintiffs assert that the defendants breached their duty because the defendants were grossly negligent. Count 3 of the complaint is a pendent claim and asserts a state law claim for the wrongful death of Bernstein.

## II. DISCUSSION

When analyzing a motion to dismiss for failure to state a claim upon which relief may be granted, the court will interpret the facts, draw inferences from those facts, and resolve every doubt in favor of the plaintiff in support of his claim for relief. *Schear v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed. 90 (1974).

Title 42 U.S.C. § 1983 protects persons from "deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." In order to be within the class of plaintiffs protected by § 1983, the party must identify an interest protected by the Constitution or federal law and must demonstrate that there has been a deprivation of that interest.

In this case, the plaintiffs claim that Bernstein was deprived of his right to freedom from bodily harm and to adequate local police protection. The plaintiffs assert that the interest with which the court is concerned is a liberty interest protected by the due process clause of the Fourteenth Amendment.

The Supreme Court has not clearly delineated the boundary between those interests that are liberty interests and those which are not, although considerable guidance is available from the Court's opinions. For example, the Court in speaking of a liberty interest has said, "without a doubt it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, to establish a home and bring up children, to worship God according to the dictates of one's own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness of free men." *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Liberty interests protected by the due process clause may arise by (1) falling within the penumbra of rights guaranteed by the Bill of Rights, (2) the fact that the state has control over the individual, or (3) other sources such as, perhaps, by state university regulations governing the appointment of academic tenure. *Kovats v. Rutgers University*, 749 F.2d 1041 (3d Cir. 1984).

**910**

■ 1. The Court has recognized the right of privacy is "implicit in the concept of ordered liberty" and is impliedly guaranteed by the Bill of Rights. *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 708, 35 L.Ed.2d 147 (1973), *quoting Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). The right of privacy includes the right to travel, *Aptheker v. Secretary of State,* 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); the right to be free from intrusion by the state into family living arrangements, *Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); the right to marry, *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); the right to procreation, *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); the right to use contraceptives, *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); and the right of a woman to terminate her pregnancy, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).[1] The Court, however, has never recognized a generalized privacy right to be free from bodily harm and to adequate local police protection. This court believes that such a privacy right would not be included among those protected by the Bill of Rights. The right to be free from bodily harm and to adequate police protection is inapposite to the individual's interest in avoiding disclosure of personal matters and interest of independence in making certain kinds of decisions. This court holds that Bernstein's asserted liberty interest on the facts before it considered in the most favorable light to plaintiff's decedent was not a right of privacy that could support a liberty interest.

■ 2. An individual's due process right to safety may arise from the fact that the state has control over the plaintiff. *Davidson v. O'Lone,* 752 F.2d 817, 821 (3d Cir.1984). Residents of a state institution for the mentally retarded have an interest in safe conditions and freedom from attacks. *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Prisoners confined in state prisons have a due process liberty interest to be free from unjustified intrusions on their personal security. *Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977). Individuals have a liberty interest to be free from personal injury when arrested by the police. *City of Revere v. Massachusetts General Hospital,* 463 S.Ct. 239, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).

■ Bernstein was not under the control of the state, county, or township or other governmental agency. In fact, Bernstein, though probably under some bail type of release, nevertheless was not in custody but was free to travel. He lived outside of Montgomery County and Lower Moreland Township and was not subject to their control. The restraint and custody cases cannot apply under such circumstances.

■ 3. The plaintiffs argue, however, that a liberty interest in freedom from bodily harm and inadequate police protection is present under the circumstances in this case. The plaintiffs point out that Pennsylvania statutory law imposes a duty on the police department to provide people with adequate police protection. *See Berlin v. Drexel University,* 10 Pa.D. & C.3d 319 (1979). As the plaintiffs concede, this does not give all citizens a right of action against the township where the police protection is inadequate. *Reiff v. City of Philadelphia,* 471 F.Supp. 1262 (E.D.Pa.1979); *Chapman v. City of Philadelphia,* 290 Pa. Super. 281, 434 A.2d 753 (Pa.Super.Ct. 1981). Where, however, there is a special relationship such as where an individual is exposed to a special danger and knowing of the danger the authorities have lawfully undertaken the responsibility to provide adequate police protection, the individual has a common law right of action against the police under state tort law. *See* 46 A.L. R.3rd 1084. The plaintiffs argue that the duty to provide adequate police protection to one where there is a special relationship arises from a state statute. Plaintiffs con-

---

**1.** These right of privacy cases are essentially of two types: (1) the interest of the individual in avoiding disclosure of personal matters; and (2) the interest of independence in making certain kinds of decisions. *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

clude that a due process liberty interest exists where there is such a statutory duty.[2]

■ Plaintiffs are not correct in this premise. The claimed duty to provide adequate police protection here arises from an alleged special relationship but not from any statute. The special relationship is claimed to have resulted from some sort of oral agreement or understanding between local policemen and the decedent. There was no statutory authority supporting either the agreement or the right to enter into such an agreement. Pennsylvania does not have any form of statutory Victim and Witness Protection Program such as that in 18 U.S.C. §§ 1501, *et seq.*, 1512 (note), 3579, and 3580.[3] Also, the agreement and the relationship flowing therefrom asserted by the plaintiffs lacks the formal legislative underpinning present in the state imposed restraint and custody cases. In those instances there are precise statutes and implementing regulations controlling the state penal system, the state disability system, and the state criminal justice system. The court determines that the decedent had no liberty interest arising out of a state statute or out of the fact that the state had some custodial or controlled contact with the decedent. If the decedent had a liberty interest in freedom from bodi-

ly harm to be afforded by adequate police protection, that interest could only have arisen from a special relationship created by a lawful agreement made with state and/or county officials, at a time when he was free of any constraint or involuntary restriction of any kind.

■ Although courts have found that under some circumstances agreements may be the source of due process property interests, *see, e.g., Kovats v. Rutgers,* 749 F.2d 1041 (3d Cir.1984); *Krynicky v. University of Pittsburgh,* 742 F.2d 94 (3d Cir.1984), the parties have not cited, nor has the court found, cases where an agreement was the source of a liberty interest. Nevertheless, assuming that a contract may give rise to a due process liberty interest, the court determines that in order for such a constitutional interest to arise a contracting party must be a governmental entity. No constitutional due process liberty interest attaches as a result of a contract between two private parties. The court determines that for § 1983 purposes the officials must have express, implied, or apparent authority to enter into such an agreement as that claimed by Bernstein on behalf of the county or township. Township and county officials, however, had no authority to promise to provide police protection to one who lived outside the township's and county's

**2.** Plaintiff cites no Pennsylvania statute, however. Instead, plaintiff relies on *Berlin* which involved 351 Pa.Code § 5.5–200.

**3.** Congress' purpose, when it enacted the Victim and Witness Protection Act, was expressly stated:
  (b) The Congress declares that the purposes of this Act [see Short Title of 1982 Amendment note set out under section 1501 of this title] are—
  (1) to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process;
  (2) to ensure that the Federal Government does all that is possible within limits of available resources to assist victims and witnesses of crime without infringing on the constitutional rights of the defendant; and
  (3) to provide a model for legislation for State and local governments.
  Pub.L. No. 97–291 § 2(b), 96 Stat. 1248–1249 (1982).
  The Act creates a special relationship between victims and witnesses and the federal government and establishes rights and obligations aris-

ing out of the statute having the force of law. The court believes that if the federal government fails to provide protection to victims and witnesses as required by the statute, victims and witnesses may have a private right of action against the federal government. In addition, the court believes that if state and local governments would enact a similar statute, their eligible victims and witnesses, depending on the provisions of the statute, would most likely have similar rights as afforded by the federal statute. The federal statute was expressly intended to be a model for similar legislation by state governments, but Pennsylvania has not enacted a similar statute. Therefore, in this case, the plaintiff cannot point to any statutory status, similar to that afforded by the federal statute, under which their decedent can claim. The best that plaintiff can claim here is that an informal relationship or agreement existed between the decedent and the police officers, without the underpinning of statutory authority.

jurisdiction.[4] In addition, township and county officials had no authority to provide continuous surveillance of Kindler who lived outside their jurisdiction.[5] Also, the township and county officials, as members of the executive and/or legislature branches of government, had no authority to keep Shaw in custody at St. Gabriel's. The fact and the duration of Shaw's detention was a judicial matter, not a police department matter. Lastly, the decedent is charged with knowledge of the scope of the authority of the township and county officials. *See Kent County Planning Inspector v. Abel,* 246 Md. 395, 228 A.2d 247 (1967). Under the circumstances of this case, it could not reasonably have been expected that the defendants would have protected the decedent from his confederates. Accordingly, the defendants had no express, implied, or apparent authority to agree to provide Bernstein with police protection.

Since there is no statutory or constitutional right at stake here, the plaintiffs have failed to set forth a claim under § 1983 upon which relief can be granted. Under the facts pleaded here the decedent had no liberty interest protected by the due process clause.

Since decedent was deprived of no interest protected by the Constitution or laws of the United States, Counts 1 and 2 of the complaint will be dismissed. Count 3, which is the pendent state claim, will be dismissed without prejudice because this court is without subject matter jurisdiction.

An appropriate Order will be entered.

**4.** Under Pennsylvania law ultra vires promises made by township officials are not enforceable against the township. *Koontz v. East Hopewell Township,* 44 D & C2d 569 (Pa.Com.Pl.1968). In *Koontz,* the court of common pleas held that in order to create a full time police force, second class township officials must be expressly authorized by statute to do so and the township must comply with all conditions of the statute. The court said in *Koontz:*

> It is also argued by the township that this conclusion is invalid as an ultra vires act. Nowhere in the Second Class Township Code is there any expressed authority enabling a second class township to enter into a contract of indemnity as an indemnitor. See Act of May 1, 1933, P.L. 101, as reenacted, revised, amended and consolidated by the Act of July 10, 1947, P.L. 1481, as subsequently amended, 53 PS § 65101, et seq. The general rule is that municipal corporations possess and can exercise only such powers as are granted in express words or those necessarily or fairly implied in, or incident to, the powers expressly conferred or those essential to the accomplishment of the declared objectives and purposes of the corporation: 37 Am.Jur. Municipal Corporations, § 112. This is the law of Pennsylvania. "A Municipal corporation can function only through the powers granted by the legislature in its charter of incorporation, or those powers incident or related thereto as essential and necessary to carry out the declared objectives contained in such express powers. Beyond such grant of authority, a municipality possesses no powers by implica-

tion. If there is doubt as to the existence of authority, or whether an act is fairly referrable to any of the delegated powers the doubt must be resolved against its existence." *American Aniline Products Inc. v. Lock Haven,* 288 Pa. 420 [135 A. 726 (1927)]. We see nothing here to support a contention that entering into a contract to indemnify one against the consequences of the indemnitee's own negligence is either a power incident to, nor one essential and necessary to, carry out the declared objectives contained in any powers expressly conferred upon a municipality. 44 D & C2d at 573–74. *See also Malatesta v. East Penn Township Supervisors,* 8 D & C3d 671 (Pa.Com.Pl.1977) (making of an indemnity contract is not expressly authorized by statute, and, therefore, the contract is void as ultra vires).

**5.** Police officers have limited authority to act in official capacity outside of their jurisdiction. *See Boorse v. Springfield Township,* 377 Pa. 109, 103 A.2d 708 (1954) (township not liable for tortious act committed by police officer outside his jurisdiction); *Commonwealth v. Garner,* 314 Pa.Super. 566, 461 A.2d 302 (1983). The superior court in *Garner* held that an arrest made outside the jurisdiction of the arresting township police officer was valid, because, as authorized by statute, the officer was in continuous pursuit of the suspect. *Id.* Applying these principles to the case before the court, since no statute authorizes police surveillance outside the jurisdiction of the township by police officers, surveillance of Kindler by those township officers would have been improper.