# IN THE SUPREME COURT OF IOWA

No. 16–1080

Filed March 16, 2018

**CITY OF DES MOINES, IOWA,**

Appellee,

vs.

**MARK OGDEN,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

The defendant seeks further review of a court of appeals decision that affirmed the district court order enjoining him from continuing the nonconforming use of his property as a mobile home park due to its violation of current and past zoning ordinances. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

James E. Nervig of Brick Gentry P.C., West Des Moines, for appellant.

Luke DeSmet, Assistant City Attorney, Des Moines, for appellee.

Laura Rae Jontz and Jessica J. Taylor (until withdrawal) of Iowa Legal Aid, Des Moines, for amici curiae.

**ZAGER, Justice.**

A property owner appealed the district court order enjoining him from continuing the nonconforming use of his property as a mobile home park. The district court found the nonconforming use of the property exceeded its authorized nonconforming use, and it was necessary to cease operation of the nonconforming use for the safety of life or property. The court of appeals affirmed the district court ruling. On our de novo review, we conclude that the City of Des Moines failed to prove that the property owner had exceeded its legal nonconforming use or that it was necessary to enjoin the property owner from continued operation of the mobile home park for the safety of life or property. We vacate the decision of the court of appeals and reverse the judgment of the district court enjoining Ogden from continuing his nonconforming use of the property as a mobile home park.

## I. Background Facts and Proceedings.

Mark Ogden owns the real estate located at 3140 Indianola Avenue in Des Moines, Iowa. Ogden operates a mobile home park at that location known as Oak Hill Mobile Home Park (Oak Hill). The zoning of the property is partially C-2 General Retail Highway-Oriented Commercial District and partially R1-60 One Family Low Density Residential District. While the full history of the property is unclear, there is evidence demonstrating the property was originally used as a heating and furnace repair business around 1938. In approximately 1941, the property transitioned into Oak Hill Tourist Camp, which provided tourists with small bedroom suites and outhouses to accommodate their traveling needs. There are no photographs of the property prior to 1947 when the property was still operating as a tourist camp, and there is little evidence documenting the changes in the

property between 1947 and 1955. Between 1947 and 1955, the property became Oak Hill Mobile Home Park.

In 1953, the City of Des Moines (City) enacted new zoning ordinances. According to the zoning designations then in effect, the trailer park was partially in the C-2 Commercial District and partially in the R-2 Residence District. In 1955, the owner of Oak Hill at the time applied for and was granted a certificate of occupancy from the City that allowed for the operation of the mobile home park as a nonconforming use. The 1955 certificate of occupancy indicates that the mobile home park was a nonconforming use as to the R-2 zoning. The certificate of occupancy does not declare that the mobile home park is otherwise out of compliance with the zoning ordinances conjointly affecting it.

The first aerial photograph on record of the property in use as a mobile home park was taken in 1963. This photograph reveals thirty-nine concrete pads with mobile homes situated on them in close proximity to one another. The photograph also shows that some of the homes had additional structures attached to them. There are a number automobiles parked on or surrounding the U-shaped access road that circles through Oak Hill and separates it from the neighboring homes. This is the only photographic evidence in the record showing the conditions of Oak Hill in 1963. More recent photographs of the property reveal that Oak Hill has become more congested over the years as some residents have added porches, decks, and more living space to their mobile homes.

The record reveals that the City has taken no action against Oak Hill from the time the certificate of occupancy was issued in 1955 until 2014. However, in 2003 the City discovered that the previous owner of Oak Hill was partially utilizing some portions of the mobile home park as

an extension of his adjacent auto dealership. Consequently, the City issued a letter to the owner advising him that the 1955 certificate of occupancy allowed him to operate the land as a mobile home park, but he was not authorized to use the land as an extension of his auto dealership. The owner stopped operating the auto dealership on the property, and the City took no further action regarding the use of the property as a mobile home park at that time. The City did not issue another warning or citation of any kind about the use of the property as a mobile home park until 2014.

On August 4, 2014, SuAnn Donovan, the neighborhood inspection zoning administrator, provided Ogden with a letter informing him that Oak Hill "has numerous violations of municipal zoning codes that were in place at the time the land was converted to a mobile home park and must be brought into compliance with those codes." Donovan explained, "There were two controlling ordinances relating to mobile home parks in effect at that time": (1) "Chapter 39 that specifically regulated the operations of mobile home parks" and (2) "Chapter 2A which regulated zoning issues." The City "reviewed the current status of the park as it relates to the two ordinances to determine violations that currently exist on the property."

Upon examination, Donovan informed Ogden that the City had found the following violations of Chapter 2A of "the Municipal Code of the City of Des Moines as it was in effect in 1955": (1) failure to provide a thirty-five foot setback from Park Avenue; (2) failure to provide a twelve-foot setback from Indianola Road; (3) failure to provide a forty-foot setback along the lot line running north from Park Avenue; (4) failure to provide a fifteen-foot setback along the lot line running west from Indianola Road; and (5) failure to supply 1200 square feet of lot area per

mobile home. Additionally, the letter noted the following "violations of Chapter 39, the Municipal Code as it was in effect in 1955": (6) failure to maintain a twenty-foot unobstructed driveway that was accessible to the public and properly maintained, marked, lighted, and equipped with an all-weather surface; (7) failure to maintain twelve feet of clearance between trailers; (8) failure to provide a two-foot walkway between the trailers to the public street; and (9) failure to provide fire extinguishers that were in good working order for every twenty-five trailer spaces located not further than 200 feet from each trailer space. Finally, Donovan noted,

> In 1962, pursuant to Chapter 57, as re-codified in Chapter 39 of the Municipal Code no additions were to be constructed on trailers other tha[n] a porch or entry way with less than 11' clearance from other additions or trailers. Many of the additions are in violation of this provision of the applicable ordinance.

The letter concluded by warning Ogden that the City could take legal action to abate the aforementioned violations if he failed "to bring the property into compliance or enter into a compliance plan within ten days" of receiving the notice letter. Ogden did nothing to establish a compliance plan or bring the property into compliance.

In October 2014, the City filed its amended petition in equity. The City requested that the court issue an injunction ordering Ogden to cease use of the property as a mobile home park in violation of the Des Moines Municipal Code. Trial was conducted before the district court on March 26, 2016. At trial, Jonathon Lund, the Des Moines Fire Marshal, testified on behalf of the City. When asked about the fire dangers that mobile home parks pose, Lund testified, "The construction of a mobile home is inherently a little bit more dangerous in the sense that they typically use smaller dimensional lumber." He explained that smaller

dimensional lumber "can lead to rapid progression of fire." Lund stated, "[I]f you have properties in close proximity to each other, it creates an exposure hazard for us which leads to more fires."

Lund also testified about the importance of fire access roads. He explained that the City requires properties to maintain a twenty-foot-wide fire access road, and he agreed that a ten-foot-wide fire access road would make it more difficult for firefighters to do their jobs effectively. Despite his testimony about the fire hazards of mobile home parks in general, Lund clarified that the fire department had not inspected the mobile home trailers at Oak Hill because they are considered single-family dwellings. Lund admitted, "I'm not aware of any outstanding violations [at Oak Hill]." This is the sum of the evidence presented regarding the mobile home park being a risk to the safety of life and property.

Donovan testified about the history of the property and the nature of the zoning violations at issue. She stated her belief that "the basic issue is the location of the mobile homes are too close together to meet either zoning requirements in '55 or today," but conceded that "the City can't impose a larger setback on a legal nonconforming" use. When asked how the City decides what zoning violations to enforce, Donovan stated, "We are mostly complaint based. When we get a complaint, we go out and investigate and determine if there's a violation and proceed with enforcement." When asked if complaints were filed regarding Oak Hill, Donovan responded, "Citizens have filed complaints. The city council actually directed the action to review this, and eventually we're going to do all of them in the city and make sure they're in zoning compliance." Donovan did not expand on the number of complaints filed, the nature of the complaints filed or who filed them, what the complaints concerned,

or any additional information about complaints allegedly made about Oak Hill. Ogden also testified about the history of the property and his prior interactions with City employees regarding the alleged zoning violations.[1]

In its ruling on the nonconforming use issues, the district court found

> [a] discontinuance of the nonconforming use under the 1955 Certificate of Occupancy is necessary for the safety of life or property. The 1963 aerial photographs demonstrate that Oak Hill was in violation of many of the contemporaneous zoning ordinances, but Oak Hill of 1963 is far less congested than Oak Hill of 2015. As detailed in the Court's Findings of Fact, conditions of Oak Hill deteriorated markedly between 1963 and 2006 (when the City began photographing Oak Hill at ground level). Now much of the open space visible in the 1963 photos is filled with the detritus of life: vehicles, outdoor recreational equipment, garbage pins, makeshift gardens, fencing, and crudely constructed additions to the mobile homes. The U-shaped road that runs through Oak Hill is in poor repair, absent markings or well-defined borders. There is no evidence of adequate fire prevention or fighting equipment. The City stated in its original letter regarding this action that the zoning regulations in 1955 were aimed at preserving the health and safety of Oak Hill and its occupants. The occupancy permit statute states that discontinuance of the permit is allowed if the safety of life or property is threatened. Oak Hill is congested and cluttered as to impede the ability of first responders to adequately address common urban dangers, such as fires and situations requiring police involvement.

---

[1]The district court excluded Ogden's testimony about his prior interactions with City employees. The City objected to this testimony on the grounds that Ogden failed to disclose these previous interactions during discovery. Ogden did not appeal that evidentiary ruling. In addition to Ogden's testimony, Gloria Lang, a resident of Oak Hill, testified that she had never interacted with the City regarding her mobile home. Lang also stated that she would struggle to relocate if the mobile home ceased its operation. The City objected to Lang's testimony, claiming both that her testimony was irrelevant to the zoning issue and that Ogden failed to disclose Lang as a witness until the day of the trial. The district court sustained the objection and excluded her testimony "because Ms. Lang was not disclosed as a witness until the morning of the trial and her testimony was irrelevant to zoning issues." The court of appeals affirmed this decision.

The district court also noted that the current use of the property as a mobile home park "has intensified beyond acceptable limitations" because the conditions "pose a real threat in the event of an emergency."

Following the ruling, Ogden did not file a motion to enlarge or amend the district court findings of fact or conclusions. However, Ogden did file an appeal. On appeal, Ogden argued the district court erred by finding both that the discontinuance of the nonconforming use was necessary for the safety of life or property and that the changes to the property were unlawful expansions of the existing nonconforming use. Ogden further argued that equitable estoppel prevented the City from obtaining an injunction and that the actions of the City amounted to an unconstitutional regulatory taking. We transferred the case to the court of appeals.

In a divided opinion, the court of appeals found Ogden failed to preserve his unconstitutional takings claim. However, it affirmed the district court order enjoining the continued nonconforming use of the property as a mobile home park. The majority concluded that the current status of the mobile home park exceeded the legal nonconforming use as it existed in 1955 and that it posed a threat to the safety of people or property at the mobile home park. The dissent disagreed, concluding the City had failed to prove either ground for the issuance of the injunction regarding the legal nonconforming use. Ogden sought further review, which we granted.

## II. Standard of Review.

The standard of review for constitutional claims, including with respect to takings, is de novo." *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 530 (Iowa 2017). Because injunctions are equitable in nature, our standard of review in this case is de novo. *City of Okoboji v.*

*Parks*, 830 N.W.2d 300, 304 (Iowa 2013). " 'Although the trial court's factual findings are not binding' in an action seeking an injunction, 'we give weight to the court's assessment of the credibility of the witnesses.' " *Id.* (quoting *Opat v. Ludeking*, 666 N.W.2d 597, 603 (Iowa 2003)). We "review decisions on sanctions for violation of discovery for an abuse of discretion." *Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 385 (Iowa 2012). Likewise, we review evidentiary rulings for an abuse of discretion. *State v. Olutunde*, 878 N.W.2d 264, 266 (Iowa 2016). "A district court abuses its discretion when it exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable," by issuing a decision that "is not supported by substantial evidence" or one that "is based on an erroneous application of the law." *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016).

### III. Analysis.

Ogden presents a number of issues on appeal. Ogden first argues the actions of the City to enjoin his use of the mobile home park amount to an unconstitutional taking. He appeals the finding of the district court and court of appeals that it is necessary for Ogden to discontinue his legal nonconforming use of the property as a mobile home park for the safety of life and property. Similarly, Ogden argues the district court and court of appeals erred by concluding the changes to the property expanded his legal nonconforming use of the property beyond its authorized nonconforming use. He alleges the doctrine of equitable estoppel bars the City from seeking to enjoin his use of the property as a mobile home park. Finally, Ogden maintains the district court erred by excluding the testimony of Gloria Lang. We address each of these issues on appeal as necessary.

**A. Land Use Regulations Under the Takings Clause.** Ogden claims that the district court ruling to enjoin his use of Oak Hill as a mobile home park amounts to an unconstitutional regulatory taking under the Iowa and Federal Constitutions. However, it is clear that Ogden failed to preserve error on this claim. Although Ogden discussed the constitutionality of takings in his proposed rulings as background information on the law of nonconforming use rights, he did not appear to be arguing that the City's actions were a regulatory taking. He also did not plead a counterclaim or defense on the basis of a taking, nor did the district court rule on any takings claims.

> [W]hen a party has presented an issue, claim, or legal theory and the district court has failed to rule on it, a rule 1.904(2) motion is proper means by which to preserve error and request a ruling from the district court.

*Homan v. Branstad*, 887 N.W.2d 153, 161 (Iowa 2016). Ogden did not file a rule 1.904(2) motion to enlarge the findings of the district court so that the district court could address his takings claim. Therefore, he waived his unconstitutional takings claim by failing to preserve it.

**B. Whether Ogden Has Lost His Legal Nonconforming Use.** Ogden maintains the district court erred both by finding that discontinuance of the nonconforming use as a mobile home park is necessary for the safety of life or property and that Ogden has unlawfully expanded his nonconforming use of the property beyond its authorized nonconforming use. We will address each of these claims in conjunction with our well-established law on legal nonconforming use.

1. *The law on nonconforming use.* A nonconforming use is one "that lawfully existed prior to the time a zoning ordinance was enacted or changed, and continues after the enactment of the ordinance even though the use fails to comply with the restrictions of the ordinance."

*City of Okoboji v. Okoboji Barz, Inc.*, 746 N.W.2d 56, 60 (Iowa 2008). This lawfully existing prior use of the property creates a vested right in the continuation of the nonconforming use once the ordinance takes effect unless the nonconforming use is legally abandoned, enlarged, or extended. *Id.* These limitations on the nonconforming use of property are expressed within the Des Moines Municipal Code which states, "Nothing in this division shall prevent the continuance of a nonconforming use as authorized, unless a discontinuance is necessary for the safety of life or property." Des Moines, Iowa, Municipal Code, div. 5, § 134-155(a) (2017).[2]

2. *Discontinuance of nonconforming use for the safety of life or property.* In our de novo review, we cannot conclude that the City has shown that the discontinuance of the nonconforming use under the 1955 certificate of occupancy is necessary for the safety of life or property. As a preliminary matter, the party seeking permanent injunctive relief to enforce a zoning ordinance must establish "(1) an invasion or threatened invasion of a right; (2) that substantial injury or damages will result unless the request for an injunction is granted; and (3) that there is no adequate legal remedy available." *City of Okoboji*, 830 N.W.2d at 309 (quoting *Sear v. Clayton Cty. Zoning Bd. of Adjustment*, 590 N.W.2d 512, 515 (Iowa 1999)). The City has failed to meet this burden.

Remarkably, the record is largely bereft of evidence demonstrating the existence of a significant safety issue. Although the fire marshal testified about the fire hazards specific to all mobile homes in general, he acknowledged that Oak Hill has not been cited for any fire safety code

---

[2]Similarly, the Des Moines Municipal Code at the time the City issued the 1955 Certificate of Occupancy allows for a discontinuation of the nonconforming use as "necessary for the safety of life or property." Des Moines, Iowa, Zoning Ordinance, pt. XX, § 2A-49 (1953).

violations. The fire marshal also testified that the fire department has never inspected the individual mobile homes at Oak Hill because they are considered single family dwellings, and the fire department does not inspect the individual mobile homes or mobile home parks in their entirety. Finally, the fire marshal testified that the current standards for fire access roads require a twenty-foot-wide access road, but he did not offer any testimony stating that the road as it currently exists at Oak Hill was dangerous.

Additionally, the city zoning inspector testified that the City had not cited Oak Hill for a zoning violation until she issued the August 5, 2014 letter of notice to Ogden about the violations. The record does not demonstrate that the City took any prior actions to remedy the zoning violations that it now claims justify the discontinuation of the legal nonconforming use or the need for injunctive relief. The City has failed to prove that the discontinuance of the nonconforming use under the 1955 certificate of occupancy is necessary for the safety of life or property pursuant to the zoning ordinances.

3. *Nonconforming use defense.* We employ a burden-shifting analysis to determine whether the property owner asserts a valid defense claiming that the challenged zoning violation is an authorized nonconforming use. *City of Jewell Junction v. Cunningham,* 439 N.W.2d 183, 186 (Iowa 1989). First, the zoning entity has the burden of proving the existence of a current zoning violation. *Id.* If the zoning entity meets its burden, the burden shifts to the property owner "to establish the lawful and continued existence of the use" by a preponderance of the evidence. *Id.* The burden then shifts back to the zoning entity to establish "a violation of the ordinance by exceeding the established

nonconforming use" if the property owner establishes a lawful preexisting use. *Id.*

 *4. Application of the burden-shifting analysis.* We next consider whether the City has proven that Ogden has so substantially changed the character and intensity of the mobile home park so as to have lost his legal nonconforming use. The law provides property owners with a certain degree of latitude in their nonconforming use, as they "may change the original nonconforming use 'if the changes are not substantial and do not impact adversely on the neighborhood.'" *City of Okoboji*, 746 N.W.2d at 60 (quoting *Perkins v. Madison Cty. Livestock & Fair Ass'n*, 613 N.W.2d 264, 270 (Iowa 2000)). For example, we held that the nonconforming use of a salvage and junkyard did not exceed its authorized nonconforming use when the inventory of junk "steadily increased" after the applicable zoning ordinance was adopted. *City of Central City v. Knowlton*, 265 N.W.2d 749, 753–54 (Iowa 1978). We based our decision in part on the Ohio Court of Appeals' holding in *Worthington v. Everson*, 226 N.E.2d 570, 571 (Ohio Ct. App. 1967), in which that court held that the increased inventory of junk cars from 33 to over 400 on the same acreage did not constitute an illegal extension of the authorized nonconforming use. *Id.* at 753. In contrast, we held that property unlawfully exceeded its authorized nonconforming use when it went from a rodeo arena to an enlarged figure-eight racetrack because the use of the property as a racetrack was "substantially different from the rodeo-type arena and the events held in it." *Perkins*, 613 N.W.2d at 270. In addition to the difference in use from the prior arena, the racetrack arena involved events that "occurred more frequently," "lasted longer than the prior events," and created more "noise, dust, and fumes" than the rodeo-type arena and rodeo events. *Id.* at 270–71.

This is a case of first impression for our court as we have yet to examine whether the intensification of a mobile home park due to the addition of structures or the expansion of homes within the park amounts to an illegal expansion of the authorized nonconforming use. As we set forth earlier, we apply a burden-shifting framework to determine whether a property owner has exceeded his or her authorized nonconforming use. *City of Jewell Junction*, 439 N.W.2d at 186. Under this framework, the burden is on the city to prove a zoning ordinance violation, and the "party who asserts a nonconforming use has the burden to establish the lawful and continued existence of the use." *Id.* If the "preexisting use has been established by a preponderance of the evidence, the burden is on the city to prove a violation of the ordinance by exceeding the established nonconforming use." *Id.* "The key is that the present use must not be 'substantially or entirely different' from the original use." *Id.* Hence, "not every change in particulars or details in the method of a nonconforming use . . . constitutes an unauthorized change in the use." *Id.* (quoting 8A Eugene McQuillin, *The Law of Municipal Corporations* § 25.202, at 90–91 (1986) [hereinafter McQuillin]).

We think three points are clear. First, a certificate of occupancy was issued in 1955 for the mobile home park. Second, Ogden's use of the property violates several zoning ordinances that are in effect today and that were also in effect in 1955. Third, a 1963 photograph of the mobile home park shows many of the same zoning violations.

The City offers two hypotheses for how this situation came about. First, the City hypothesizes that the property complied with zoning ordinances in 1955 but went out of compliance when the park underwent substantial changes between 1955 and 1963, the date of the photograph. Alternatively, the City hypothesizes that even though the

City issued a certificate of occupancy in 1955, the City believed at that time the mobile home park was noncompliant with zoning *and* was not a valid nonconforming use.

We think both hypotheses are completely speculative. The more logical conclusion from the record is that the City knew what it was doing when it granted a certificate of occupancy in 1955 and then raised no zoning issue for the ensuing fifty-nine years. Likewise, the more logical conclusion from this record is that the mobile home park was laid out in 1955 the same way it was laid out in 1963 and every successive year. In fact, the 1955 certificate of occupancy establishes "the lawful and continued existence" of the nonconforming use of the property since the zoning ordinances in 1955 prohibited the City from issuing the certificate unless the proposed use of the property was lawful. *Id.*

Consequently, our disposition of this issue hinges on whether the City has met its burden to prove that the zoning violations at Oak Hill have exceeded the nonconforming use established by the 1955 certificate of occupancy. The City argues Ogden has exceeded the established nonconforming use of the property because the use of the mobile home park has intensified in terms of the numbers and location of structures attached to the mobile homes. The district court—and subsequently, the court of appeals—agreed, noting the congestion on the property had increased due to "the detritus of life: vehicles, outdoor recreational equipment, garbage bins, makeshift gardens, fencing, and crudely constructed additions to the mobile homes." We disagree.

"[I]ntensification of a nonconforming use is permissible *so long as the nature and character of the use is unchanged and substantially the same facilities are used.*" *Id.* (quoting *Kent Cty. Planning Inspector v. Abel*, 228 A.2d 247, 252 (Md. 1967)). The City fails to present evidence

in this case to demonstrate that the zoning violations at Oak Hill have been expanded to the point where the established nonconforming use is " 'substantially or entirely different' from the original use." *Id.* The City acknowledges that Oak Hill has not changed in size or in its form of use as a mobile home park. The number and location of the mobile homes is roughly the same as it was when Oak Hill was first photographed in 1963. In fact, there are actually fewer mobile homes on the property than there were in 1963.

Further, the additions to the structures of the mobile homes, as well as the "detritus of life" the district court noted, have not substantially changed the nature and character of Ogden's use of the property as a mobile home park. Rather, this steady increase in the additions to the mobile home structures and other objects found on the property represents a marginal change that falls within the degree of latitude that the law affords to property owners in their nonconforming use. As we have previously held, "not every change in particulars or details in the method of a nonconforming use . . . constitutes an unauthorized change in the use." *Id.* (quoting 8A McQuillin § 25.202, at 90–91).

While we are aware that other jurisdictions have held that replacing existing mobile homes with larger mobile homes results is an unlawful expansion of a nonconforming use, those cases are factually different from the material facts in this case. *See, e.g., Wiltzius v. Zoning Bd. of Appeals*, 940 A.2d 892, 910 (Conn. App. Ct. 2008); *Kosciusko Cty. Bd. of Zoning Appeals v. Smith*, 724 N.E.2d 279, 281 (Ind. Ct. App. 2000). In those cases, the local zoning officers and regulations treated each mobile home within the mobile home park as a separate structure with separate compliance issues, individually examining the expansion of

each mobile home at issue to determine whether it retained its nonconforming use. *See Wiltzius*, 940 A.2d at 909–10; *Kosciusko Cty. Bd. of Zoning Appeals*, 724 N.E.2d at 281. In contrast, throughout these proceedings, the City has argued that Oak Hill in its entirety as a mobile home park has exceeded its nonconforming use and does not distinguish between the mobile home park in its entirety and each individual mobile home for enforcement purposes.

Ultimately, Oak Hill is being used as a mobile home park in a manner that is not " 'substantially or entirely different' from its original use" as a mobile home park when the City issued the 1955 certificate of occupancy allowing for its nonconforming use. *City of Jewell Junction*, 439 N.W.2d at 186. Therefore, on our de novo review, we conclude that the City failed to prove that the nature or character of the mobile home park had so substantially changed or intensified to warrant the discontinuation of the legal nonconforming use as a mobile home park. Accordingly, we vacate the decision of the court of appeals and reverse the judgment of the district court on this issue.

**C. Ogden's Additional Claims.** Based on our decisions set forth above, we need not address Ogden's remaining claims. These claims include whether the doctrine of equitable estoppel barred the City from seeking to enjoin his nonconforming use of the property and whether the district court abused its discretion by excluding the testimony of Gloria Lang.

**IV. Conclusion.**

For the foregoing reasons, we conclude that the City did not prove that Ogden had lost the vested right he had in the operation of Oak Hill Mobile Home Park as a legal nonconforming use. We therefore vacate the decision of the court of appeals, reverse the judgment of the district

court, and remand the case to the district court for an order dismissing the case.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**